# ANNA E. ANDERSON v. HANNAH JOHANESEN.[1]

May 25, 1923.

No. 23,414.

**Location of government section corner.**
1. A government section corner is where the government surveyors correctly or mistakenly place it. If its location can be found it is not a lost corner, and it controls.

**Finding as to location sustained.**
2. The evidence sustains the finding of the trial court that a section corner was not lost, and its finding as to its location.

Action in the district court for Chippewa county to determine the boundary line to certain land. The case was tried before Qvale, J., who made findings and ordered judgment in favor of plaintiff. Defendant's motion to amend the findings was denied. From an order denying her motion for a new trial, defendant appealed. Affirmed.

*J. O. Haugland,* for appellant.

*C. A. Fosnes* and *John C. Haave,* for respondent.

DIBELL, J.

This is a proceeding to determine the east and west boundary line between the lands of the plaintiff and the defendant. There were findings favorable to the plaintiff. The defendant appeals from an order denying her motion for a new trial.

1. The plaintiff is the owner of the southeast quarter of the southeast quarter and lot 4 of section 13, and the defendant is the owner of the north half of the northeast quarter of section 24, all in township 118, range 42, in Chippewa county. The dispute is as to the east and west section line between them. This depends upon the location of the section corner common to sections 18 and 19 in range 41, and 13 and 24 in range 42, all in township 118.

[1]Reported in 193 N. W. 730.

A government corner is where the government surveyors correctly or mistakenly place it; and if the location can be found it controls and the corner is not a lost corner. Lawler v. Counties of Rice and Goodhue, 147 Minn. 234, 178 N. W. 317, 180 N. W. 37; Sommer v. Meyer, 125 Minn. 258, 146 N. W. 1106; Goroski v. Tawney, 121 Minn. 189, 141 N. W. 102; 1 Dunnell, Minn. Dig. §§ 1079-1081.

2. The trial court found that the section corner was not lost, and that a corner said to be found by a surveyor, one White, about 1910, and marked by a stone, was the government corner. White started at a fairly well established section post a mile east, and came west to the range line. He was not available as a witness, and the accuracy of what he did is not shown. There is evidence, however, and it is quite satisfactory, that he dug down on the range line and found part of a decayed post or stake, over which he placed a stone which has come to be known as the White corner. Several saw the rotten stake when White dug it up. Somewhere about 1870 one Olson acquired the lands now owned by the plaintiff, "bought from the Indians" he says. In early times he knew the corner post. He was there when White was there. He saw the post which White dug up. He is remembering a location a long time back. There were long intervals when he did not see it. His testimony, however, is positive that the White corner corresponds with the old government corner. It is weakened by the fact that 50 years ago, shortly after he acquired the land, he was concerned with his son-in-law in planting a row of cottonwoods along the south side of section 18. They were to be placed so that there might be a road 4 rods wide along the east and west section line. They were placed considerably more than two rods north of the section line—something like 22 feet more. Olson gives no helpful explanation of so great a margin of distance, though planting the trees a few feet in from the road boundaries might be natural enough. Nevertheless he is positive that the old government section post was where White placed the stone.

One Chamberlain, shortly before the trial, made a survey commencing at the corner post used by White. He went west of the range line to the Minnesota river. He ran another line from a section

post placed by some surveyor a mile south of the White corner. He ran a number of lines, perhaps from not very certain data. He fixed the true section corner 18 feet north of the White corner. He found no physical evidence of an established government corner there. The country was prairie. There were no witness bearing trees, nor is there evidence of mounds or pits located with reference to a corner. The government field notes are not in evidence.

There have been a number of surveys, six or seven of them, and the true corner seems to have been long in doubt. The survey of White is of no consequence unless he found the original government stake. If the stake was found Chamberlain's survey must yield to it. The evidence sustains the finding of the trial court that the government corner was not lost and that the White stone "was and is placed directly over the decayed remains of the original post set by said surveyor for said corner, and said stone marks and is the true corner of said sections." This ends the controversy.

The parties agreed that the boundary between their lands was a straight line west to the meander line of the Minnesota river from the true corner common to sections 13 and 24 in range 42 and sections 18 and 19 in range 41, and the court established the line accordingly taking the White corner as the true corner.

Order affirmed.