CLIFFORD A. BARTLETT AND OTHERS v. STALKER LAKE SPORTSMEN'S CLUB AND OTHERS.

168 N. W. (2d) 356.

May 23, 1969—No. 41179.

394

*Stearns, Torrison, Goetteman & Driscoll, Mandt Torrison,* and *Edward J. Driscoll,* for appellants.

*Williams, Nelson & Nitz* and *Harlan L. Nelson,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiffs' motion for amended findings or a new trial.

Plaintiffs brought this action in equity seeking an injunction against trespass upon and over Government Lot 2 of Section 22, Township 132, Range 41, Otter Tail County, Minnesota. It is not disputed that defendants entered upon and crossed over a portion of this lot and that the lot is

owned by plaintiffs. The trial in district court established the following facts:

The lot in question abuts Tamarack Lake, which is a shallow body of water, part of which is open and part covered by floating bog, marsh, and wild rice. The open water comprises some 150 acres; with the bog, the total area is about 500 acres. The maximum depth of the water is approximately 4 feet, but the average depth is 1-½ feet. There are no fish in the lake and it is unsuitable for swimming or boating but is extremely well suited to duck hunting. This is, in fact, the only purpose for which it is used.

Plaintiffs in this action began about 1954 to acquire either by purchase or lease all of the riparian lands surrounding the lake to thereby create in effect a private hunting preserve. However, in 1954 one Julius Thompson, then owner of the lot in question, executed and had recorded with the register of deeds of Otter Tail County a document which purported to grant to the public the perpetual right to hunt on Tamarack Lake in so far as he possessed that right as a riparian owner and to—

"* * * grant, convey, bargain and sell unto the public a perpetual easement for road purposes over and across the lands hereinafter described, to-wit:

"The North Two (2) rods and the East One (1) rod of the Southeast Quarter of the Northwest Quarter (SE ¼ of NW ¼), and the West One (1) rod and the South Two (2) rods of Government Lot Two (2), all in Section Twenty-two (22), in Township One Hundred Thirty-two (132), Range Forty-one (41), Otter Tail County, Minnesota."

In 1957 Thompson conveyed his lot to one Rieken by warranty deed. This deed made no mention of any prior easement. In 1964 Rieken conveyed the property by a warranty deed which specifically revoked and rescinded the purported easement. That same year the property was acquired by Kenneth T. McCord, one of the plaintiffs in this action, and his wife. With the acquisition of this lot in 1964 the group, which had evolved into plaintiff Tamarac XV Club, Inc., held all the land riparian to Tamarack Lake by either ownership or lease.

In September 1955—apparently under the impetus of one Rudy Strom,

a private citizen and head of the Sportsmen's Club of Dalton—Otter Tail County through its Board of County Commissioners and County Highway Engineer viewed the land specified by Thompson in the purported public easement and approved and paid $90 for work by a bulldozer to clear an access across it to the lake. Both defendants' and plaintiffs' witnesses seem to agree that the access road, if it may be called that, deviated from the easement described in the 1955 instrument. That easement covered a strip 2 rods (33 feet) wide running along the south edge of the lot from a public road on the east to the bank of the lake on the west. The access as cleared started within that strip and ended within it, but for some distance in between it ran farther north than the easement permitted. The county engineer explained this deviation from the fence line as a change the owner (Thompson) agreed to when the contractor indicated the land to the north would be much easier to clear. Estimates of the extent of the deviation varied from "one little jog" to 165 feet.

Plaintiffs' witnesses, all members of Tamarac XV Club, testified that nonmembers had been found on the lake in only a few isolated instances between 1955 and 1967. However, according to defendants' witnesses, many of whom were defendants, there was continued use of the lake during that period by at least six to ten hunters. This use included actual hunting during the season each year besides building and maintaining a catwalk running southeast from the access across the bog to open water, and a dock, and keeping boats on the lake the year around. Each of the persons who testified to having hunted the lake from 1955 on indicated that, with a few exceptions, he had always reached the lake by means of the access trail. The witnesses testified that, other than some changes in the level of vegetation, the condition of the trail had not changed much over the years.

The trial court treated the instrument recorded by Thompson in 1955 as an offer to dedicate. It held that the offer had been accepted the same year by the county's act of paying $90 to have the access cleared and by the hunters' use prior to the 1957 warranty deed to Rieken and, the easement having thus been accepted, the 1957 conveyance was subject to it. The court found that therefore defendants had not trespassed. It further found that defendants, since they had legal access to the lake, had the right

to use it. The requested injunction was denied as was the blended motion for amended findings or a new trial. With each of his orders the trial judge supplied a well-reasoned, helpful memorandum.

Plaintiffs raise three issues in this appeal: (1) Whether the evidence sustains the trial court's finding that the offer to dedicate had been accepted prior to 1957; (2) whether, if the easement was accepted, the public thereby acquired the rights of a riparian owner; and (3) whether the trial court properly concluded that Tamarack Lake is a public water available to the public for duck hunting, provided there is a means of legal entry.

■ It is clear under Minnesota law that there are two requirements for common-law dedication: (1) The intent of landowner to have his property appropriated for and devoted to some public use, and (2) an acceptance of that use by the public. Daugherty v. Sowers, 243 Minn. 572, 574, 68 N. W. (2d) 866, 868. Once these two elements are present the dedication is complete and the landowner cannot revoke it. Daugherty v. Sowers, *supra*; Flynn v. Beisel, 257 Minn. 531, 542, 102 N. W. (2d) 284, 292.

Where the evidence is conflicting, the existence of each of the required elements is a question of fact. Therefore a finding by the trier of fact as to their existence may be reversed on appeal only if it is manifestly and palpably contrary to the evidence. Flynn v. Beisel, *supra*.

In the present case there are two factors: The effect of the deviation from the proffered easement described in the instrument, and whether, with or without the deviation, there was an acceptance. As to the first, the only evidence concerning the failure to follow the fence line indicates that Thompson agreed to the change. No evidence was offered to show that he made any objection to it. Intent to dedicate may be either expressed or implied from the landowner's conduct. Daugherty v. Sowers, *supra*. Here there was a clear expression of an intent to dedicate and at least acquiescence in an alteration of the proffered roadway. The only conclusion possible is that, if properly accepted, the altered easement was duly dedicated and the deviation from the fence line does not affect its validity. See, Flynn v. Beisel, *supra*.

Acceptance of an offer to dedicate may be shown either by acts of public officers or by user by the public. Daugherty v. Sowers, *supra*. As stated by the court in Flynn (257 Minn. 541, 102 N. W. [2d] 292):

"\* \* \* [T]he user by the public is sufficient if those members of the public—even though they be limited in number and even if some are accommodated more than others—who would naturally be expected to enjoy it do, or have done so, at their pleasure and convenience."

Further, the sufficiency of the public user depends on the character and extent of the use as well as the nature of the surrounding area and may be of short or long duration. See, Daugherty v. Sowers, *supra.*

The evidence here shows that the offer to dedicate was made on December 15, 1954. The county had looked for an access to the lake on the opposite side the previous year. After the offer was made, the county engineer and at least one county commissioner viewed the land and, at the insistence of one or more private citizens, the county board paid a private contractor to clear access on the proffered easement from a public road to the shoreline. This work was done September 19 and 20, 1955. At least six members of the public used the access to reach the lake and hunt during the 1955 season. The following year, prior to the opening of hunting season, members of the public constructed a catwalk from the shoreline to open water with a dock at the end, using the cleared access to get to and from the lake. Again hunters used the access during the season. The catwalk has been maintained and the access used by hunters every year since that time.

It is clear from the record that the only use made of the lake is as a site for duck hunting. Therefore, the only time it would be reasonable to expect the access to be used is duck hunting season. Under these circumstances, it does not appear that the finding of the trial court that there was sufficient official action and public use to constitute an acceptance prior to the 1957 conveyance was manifestly and palpably contrary to the evidence and we are therefore bound to uphold it.

■ Plaintiffs' argument that defendants acquired no right as to use of the lake under the dedication is answered by Flynn v. Beisel, *supra.* In that case, riparian owners on a navigable lake sought to enjoin the placement of public docks where public access to the lake had been granted over an easement terminating at the shoreline. The injunction was denied. The court stated (257 Minn. 543, 102 N. W. [2d] 293):

"* * * The evidence is, we think, conclusive that a common-law dedication for public use was intended by past and present owners of the properties involved and that the accepted intended public use does not cut off at the water's edge but that the dedication was intended to enable the public to have access to the water for the better enjoyment of the public right of navigation, and further to give the public, as well as the township of Paynesville, riparian rights to be enjoyed in common with the plaintiffs."

That the offer of dedication in the present case was intended to provide the public with the right to use the lake cannot be doubted. The instrument Thompson had recorded specifically states that intent. The difference between Flynn and this case, for present purposes, is that in Flynn the lake was navigable while Tamarack Lake is not. However, this difference would not appear to be material. The Flynn case applied the rights of a riparian owner, as set out in Johnson v. Seifert, 257 Minn. 159, 100 N. W. (2d) 689, to the public by virtue of its ownership of the easement abutting the lake. In Johnson, the court said (257 Minn. 165, 100 N. W. [2d] 694):

. "Any assumption that a lake—whether it be meandered or not—whose shore is owned by more than one tract owner does not involve riparian rights unless it is navigable under the Federal test of navigability is wholly untenable and must be rejected."

The Johnson case held that, whether a lake be navigable or nonnavigable, meandered or unmeandered, public or private, all abutting or riparian owners hold a right of reasonable use of the entire overlying water. From this it may be concluded that the court's holding in Flynn as to the rights of the public as owners of an abutting easement was not based on the navigable character of the lake.

Our reliance on the Flynn case here is not intended to cast doubt upon the recent decision of this court in Farnes v. Lane, 281 Minn. 222, 161 N. W. (2d) 297. In that case we stated that a private easement affording access to a lake over riparian lands does not make the grantee a riparian owner with the right to exercise the rights of such owners. As indicated by a comparison of the Flynn and Farnes cases, there are fundamental differences between a private easement granting a right to cross the property of

the grantor and a dedication to a public use. We specifically stated in the Farnes opinion that the decisions relied on in Flynn were not applicable to the situation then before us. 281 Minn. 225, 161 N. W. (2d) 300. In addition, it should be noted that in the present case we are concerned with the use of the surface of the water, while in Farnes the issue was the right to place a structure of a more-or-less permanent nature at the shoreline. Also, the ambiguity of the easement in Farnes is not present in this case. Here, the document executed by Thompson clearly states that it was his intention to grant a right to hunt upon the lake.

Plaintiffs contend that the rule set down in the Johnson case is not applicable. Their argument, apparently based on the fact Johnson was not decided until 1960 while the present case is concerned with the 1955 to 1957 period, is refuted by the case itself, since in Johnson the court applied the new rule set down to the litigants before it, indicating that the rule was not limited to prospective application. There is language in Johnson to the effect that the decision did not cover "every pothole or swamp frequented by wild fowl" (257 Minn. 169, 100 N. W. [2d] 697), but an examination of the facts of that case indicates that one of the two lakes involved was suitable only for duck hunting and comprised only 35 acres. With this as a guide, Tamarack Lake, which covers some 500 acres, 150 of which are open water, can hardly be classed as a "pothole" to which the decision is inapplicable.

■ Plaintiffs argue that the conclusion of the trial court on the right of defendants to hunt on the lake in effect overrules State, by Burnquist, v. Bollenbach, 241 Minn. 103, 63 N. W. (2d) 278. In that case the state attempted to condemn a public access to a lake where all the riparian land was owned by one individual, under a statute giving the state authority to condemn access to public water where none was available. A dismissal with prejudice was affirmed by this court.

The most obvious difference between Bollenbach and the present case is that in Bollenbach the issue was the right of the state to condemn access to a non-navigable lake, while here the issue raised is whether such an access may be accepted when offered by a riparian owner. It should also be noted that in Bollenbach there was only one riparian owner, but here, in

the 1955-1957 period, there were several riparian owners on Lake Tamarack.

Plaintiff's argument is answered by the Bollenbach case itself. On appeal, the state argued that there had been a dedication of the right to hunt and fish by prior owners. While holding that the question was not properly before it, the court stated (241 Minn. 123, 63 N. W. [2d] 290):

"* * * Although the record in the instant case fails to support the essential elements of a common-law dedication, it may well be that in the future a public right to hunt and fish on some of the small inland lakes of this state can be grounded on a theory of dedication * * *."

In support, the court cited Village of Pewaukee v. Savoy, 103 Wis. 271, 79 N. W. 436, 50 L. R. A. 836, where the court recognized the right of riparian owners to dedicate their rights even on non-navigable lakes.

It should also be noted that holding the public incapable of accepting a clear offer to dedicate riparian rights and an access easement because the lake is not navigable would be inconsistent with the recreational policy of this state as evidenced by both legislation and expenditure of funds to make as many facilities available to the public as possible.

Any claim of hardship by plaintiffs is incapable of supporting a reversal. The cases clearly limit exercise of riparian rights so as not to unduly infringe on the rights of other riparian owners. Flynn v. Beisel, *supra*; Johnson v. Seifert, *supra*. Plaintiffs proceeded to acquire most of their riparian property after Thompson had recorded his offer and the county had cleared the access. They must have been aware of the possible consequences.

Having reviewed all of plaintiffs' claims, we conclude that the order of the trial court must be affirmed.

Affirmed.