Richard D. WOJAHN et al., Appellants,

v.

Ronald W. JOHNSON and Donna J. Johnson, Defendants and Third Party Plaintiffs, Respondents,

Jerome C. GRUNDHOFER, Defendant and Third Party Plaintiff,

v.

Ruth BERGLUND et al., Third Party Defendants.

No. 49828.

Supreme Court of Minnesota.

Sept. 5, 1980.

300

Wood R. Foster, Jr., and Kent B. Hanson, Minneapolis, for appellants; Grossman, Karlins, Siegel & Brill, Minneapolis, of counsel.

Lester D. Walters, St. Paul, for respondents.

Heard before SHERAN, C. J., YETKA and WAHL, JJ., and considered and decided by the court en banc.

SHERAN, Chief Justice.

Plaintiffs brought suit for a determination of the boundary line between their property and defendants', and for a determination that a driveway running close to the boundary line had been dedicated as a public street through public maintenance and use. The Washington County District Court established the boundary line in a location favorable to defendants, and ruled that the driveway, which was held to be on defendants' property, was not a public road. Plaintiffs subsequently brought a motion for amendment of findings or for a new trial, which was denied by the trial court. The plaintiffs now appeal from the denial of their motion for a new trial and from the original judgment. We affirm in part, but reverse in part and remand for further proceedings consistent with this opinion.

Plaintiffs are the record owners of the southwest quarter of the northeast quarter of Section 8, Township 31 North, Range 20 West, May Township, Washington County, Minnesota, comprising about 40 acres. Defendants own the northwest quarter of the

southeast quarter of Section 8, directly to the south of plaintiffs' land.

Plaintiffs acquired their property in 1964 from Alfred and Ruth Berglund, who had owned the property for just over three years. The Berglunds had also owned the defendants' property; the two parcels were in single ownership from at least December 22, 1960 to July 22, 1961.

The Berglunds transferred what was to become defendants' property to Jeanette and John Gilbert, Alfred Berglund's sister and brother-in-law, on July 22, 1961. The Gilberts transferred the property to John Murray by warranty deed on October 17, 1962. Murray had occupied the premises, however, since about December, 1961. The abstract discloses that Murray's mortgage was foreclosed in 1966 and title was transferred to the State Bank of St. Anthony Village. Title was subsequently transferred to My-lene Corporation in 1968. Defendants Johnson acquired the property from the My-lene Corporation on June 2, 1972.

The Washington County surveyor completed a remonumentation and survey of Section 8 in late summer 1976. This survey placed the north boundary of defendants' property somewhat to the north of a driveway leading from the western edge of 165th Street in May Township to both defendants' and plaintiffs' homes, thus locating the driveway entirely on defendants' property.

At trial, the plaintiffs claimed that the correct boundary should be adjudged further south to extend from about the middle of the disputed driveway westward. The plaintiffs claimed that the Washington County survey was invalid, or that the claimed boundary had been established by practical location or adverse possession. Plaintiffs also claimed that the driveway had become a public road through public use and maintenance. The trial court ruled against plaintiffs on each issue and ordered judgment enjoining plaintiffs from trespassing on defendants' property. Plaintiffs made several post-trial motions, which were denied by the trial court, and the plaintiffs now bring this appeal from the denial of the post-trial motions and from the original judgment.

The plaintiffs first challenge the validity of the survey by the Washington County surveyor, Paul Johnson, of Sections 7 and 8 in the relevant township, requested by defendants, and completed in late summer 1976. Two private surveys were also made specifically of plaintiffs' parcel, one by John Dwyer for plaintiffs, and another by Arthur Holm for defendants. Dwyer and Holm used the points established by Johnson in making surveys that were essentially consistent with the Johnson survey. The plaintiffs attack the methodology of the Johnson survey on essentially three grounds, contending that the survey illegally deviated from the original government survey in angles and distances between corners, that the county surveyor did not adequately investigate before determining that certain corners were "lost," and that the surveyor inappropriately used proportionate measurement techniques.

Johnson testified that his aim in resurveying Sections 7 and 8 was to reestablish the corners of the original government survey, and from those corners to plat the correct boundary lines between sections and quarter-sections. To this end he followed closely the original government field notes and drawings and relied on past records of county surveyors. He was able to find physical evidence of three of the corners of Section 8, the southeast, the south quarter, and the northeast. He was unable to find physical evidence of the other five corners of Section 8 after a preliminary study of those areas in which he felt the corners should be by field measurements and distances and a subsequent search of those areas. He admitted, however, that he did not talk to the residents of the area in attempting to find evidence of the missing corners and that the boundary line established by the reestablished corners does not correspond with existing and previous fence lines.

Johnson then reestablished the five "lost" corners of Section 8 by reference to the three known corners of Section 8, and by

reference to known corners of abutting sections. To this end he used the federal method of double proportionment for establishing a lost section corner. In doing so, Johnson found that the northwest and north quarter corners of Section 8, set a few years earlier by the previous county surveyor, were in error. Plaintiff called as an expert Charles Milner, a surveyor, who testified that in locating lost corner monuments it is important to talk to older people, and that "ancient fences which have been there many years" are "helpful" in locating such lost monuments.

■ A trial court determination as to a disputed boundary is one of fact, and will be accorded the same deference as factual determinations in other cases. *See Erickson v. Turnquist*, 247 Minn. 529, 531–32, 77 N.W.2d 740, 742 (1956). Thus, for instance, when two competent surveyors disagree as to where a boundary line should be, the trial court's determination as to which surveyor is correct depends mainly on each surveyor's credibility and will not be reversed if there is reasonable support in the evidence for such a determination. *Donaldson v. Kohner*, 264 Minn. 230, 233, 118 N.W.2d 446, 448 (1962).[1]

■ When a resurvey is made of sections, quarter–sections, etc., originally established by United States Government Survey, the aim of the resurvey must be to retrace and relocate the lines and corners of the original survey. Even when an original section corner is erroneously placed by an original government surveyor, it cannot be corrected by the courts or a subsequent surveyor. *See Goroski v. Tawney*, 121 Minn. 189, 141 N.W. 102 (1913); *Anderson v. Johanesen*, 155 Minn. 485, 193 N.W. 730 (1923); Minn.Stat. § 389.04 (1978). The county surveyor in fact testified that this was his aim—to reestablish the lines of the original survey. The plaintiffs, however,

argue that certain discrepancies between the original government field notes and the Johnson survey in distances between corners, and in the angles used to establish those corners, prove that the Johnson resurvey differed from the original survey. However, Johnson explained this as being a difference in the accuracy of measuring devices, not as a difference in location of monuments, stating, "We * * * seldom match a dimension between known monuments of what is recorded on the original plat." The trial court should be allowed to credit this testimony, and determine that the discrepancies were due to differences in measurement accuracy and not in the actual size of the section. *See also* Comment, *Retracement and Apportionment as Surveying Methods for Re–establishing Property Corners*, 43 Marq.L.Rev. 484, 503 (1960) [hereinafter cited as Marquette Comment] ("[S]urveying is the *art* of measurement and not an exact *science*. Changes in nature generally as well as human nature preclude exact duplication of original measurements * * * .")

■ The plaintiffs also argue that the system of double proportionate measurement used by Johnson was invalid in the present case, citing no authority. This federal method, however, seems to have been explicitly used and sanctioned by this court in *Grandt v. Town of Pokegama*, 163 Minn. 368, 204 N.W. 317 (1925). Double proportional measurement also appears to be standard surveying procedure when corners marking section boundaries are lost. *See* Jesse E. Fant, Report on Public Land Survey in Minnesota 45–48 (February 1970) (publication of the Department of Civil Engineering, University of Minnesota).

■■ More troubling is plaintiffs' argument that the surveyor did not make sufficient inquiry before locating lost corner monuments and did not take existing fence

---

1. In *Donaldson*, we stated:

It would serve no useful purpose to explain in detail the method of survey used by the two surveyors. The difference in the line which they established obviously occurred as a result of the manner in which they proceeded to do

their work. The court's determination of the crucial fact as to which survey was the correct one rests almost exclusively upon the credibility attached to the testimony of these two witnesses. [261 Minn. at 233, 118 N.W.2d at 448].

lines sufficiently into account. It is proper surveying techniques not to use the proportional measurement system until all efforts at finding the location of an obliterated monument by collateral evidence have failed. *See United States v. Doyle*, 468 F.2d 633 (10th Cir. 1972); Marquette Comment, *supra* at 492. In this respect a surveyor cannot totally disregard a long established and maintained boundary fence. *See Wilson v. Stork*, 171 Wis. 561, 177 N.W. 878 (1920). The facts of *United States v. Doyle*, cited by plaintiffs, however, actually support defendants' position. In that case the Tenth Circuit affirmed a trial court determination that a section corner was lost and that proportional measurement was proper in reestablishing it. That method was proper despite the fact that there was "little contact with owners" by the resurveyor; that the resurveyed line was inconsistent with a blazed tree line; and that a former owner of the property gave positive testimony about markers and monuments that had been staked out along the blazed tree line. The surveyor in *Doyle*, in attempting to find the corners, only searched the area thoroughly and made inquiries of past surveyors who could supply no helpful information. 468 F.2d at 637–38.

Likewise in the instant case, the surveyor made a thorough search of the area and relied heavily on the notes of prior surveys. In addition, evidence of when and where any "boundary" fence existed along the southern border of plaintiffs' property was very equivocal. At any rate, it would be anomalous to state that such a fence should be conclusive upon a surveyor in locating a survey boundary in the absence of any other evidence that it represents the true original government boundary. The evidence shows that Paul Johnson was aware of the fence line, but simply did not consider it conclusive in locating lost monuments. We therefore conclude that the finding by the

trial court that five corner monuments of Section 8 were lost and that Paul Johnson used proper surveying techniques in reestablishing them is not clearly erroneous and should be affirmed.

■ The plaintiffs also contend that the evidence clearly showed that a fence somewhat to the south of the surveyed boundary line constituted a practical boundary under Minnesota law. It is clear that "[a] boundary clearly and convincingly established by practical location may still prevail over the contrary result of survey." *Phillips v. Blowers*, 281 Minn. 267, 274, 161 N.W.2d 524, 529 (1968). The practical location of a boundary line can be established in one of three ways:

(1) Acquiescence: The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations.

(2) Agreement: The line must have been expressly agreed upon by the interested parties and afterwards acquiesced in.

(3) Estoppel: The party whose rights are to be barred must have silently looked on with knowledge of the true line while the other party encroached thereon or subjected himself to expense which he would not have incurred had the line been in dispute.

*E. g., Theros v. Phillips*, 256 N.W.2d 852, 858 (Minn.1977); *Phillips v. Blowers*, 281 Minn. 267, 269, 161 N.W.2d 524, 526 (1968).

■ The plaintiffs claim that a fence existed somewhat south of the disputed survey line on the land portion of the width of the 40–acre parcel and that the fence was acquiesced in as the boundary between the two sections for longer than the statutory period of 15 years, *see* Minn.Stat. § 541.02 (1978), under the acquiescence theory of practical location.[2]

---

2. The plaintiffs also argue that the trial court was incorrect in not considering the "agreement" or "estoppel" theories of practical location. There was, however, no evidence of an express agreement between the parties or their predecessors as to a boundary line. Nor was there any evidence that defendants stood by *in*

*knowledge of the true boundary line* while plaintiffs constructed improvements to their property as is required by the third or estoppel theory of practical location. Ronald Johnson testified repeatedly that he did not know the location of the true boundary until the applicable surveys were complete. We have never

It is not necessary to set out in detail the testimony concerning the existence or location of the fence. Essentially, plaintiff Richard Wojahn testified that the fence existed along the "northern border" of his property when he inspected it in 1963. He stated that he maintained the fence until 1975. Defendant Ronald Johnson testified that he had no knowledge of the boundary fence, but did describe another shorter fence running somewhat to the south of the present site of his house. Various other witnesses also gave testimony concerning a boundary fence as it existed at various times through the years. The trial court found, among other things, that the testimony as to the existence and location of a boundary fence was equivocal, and that there was no showing that the fence had stood between adjoining landowners for the statutory period.

 Under the "acquiescence" theory of practical location, "the acquiescence required is not merely passive consent to the existence of a fence * * *, but rather is conduct or lack thereof from which assent to the fence * * * as a boundary line may be reasonably inferred." *Engquist v. Wirtjes*, 243 Minn. 502, 507–08, 68 N.W.2d 412, 417 (1955). In order for the one asserting practical location to prevail, the evidence of acquiescence must be clear, positive, and unequivocal. *Id.* at 507, 68 N.W.2d at 417. When a fence is claimed to represent a boundary line under an acquiescence theory, one of the most important factors is whether the parties attempted and intended to place the fence as near the dividing line as possible. *Id.* at 508, 68 N.W.2d at 417; *see Fishman v. Nielsen*, 237 Minn. 1, 53 N.W.2d 553 (1952).

 In the current case, the trial court was justified in finding the evidence insufficient to show clearly and unequivocally that Johnson or his predecessors–in–interest recognized the fence to be a dividing line between the adjoining parcels for over 15 years. Although the record probably contains enough evidence, including physical evidence, of the existence at one time or another of the alleged boundary fence in question, there was much evidence that the fence was deteriorating and in disrepair at various times in the past.

There was also conflicting testimony of the purpose of the fence. We conclude that the evidence on which the plaintiffs rely is too amorphous to support a finding of a boundary line by practical location as a matter of law. Accordingly, the trial court's finding on this issue is affirmed.

 The plaintiffs further contend that they acquired title to the land up to the alleged fenceline by adverse possession. To establish title by adverse possession, a disseisor must show by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for 15 years. *Ehle v. Prosser*, 293 Minn. 183, 197 N.W.2d 458 (1972); Minn.Stat. § 541.02 (1978). In this case the statutory period obviously could not have started running until July 22, 1961, when the Johnson parcel was transferred by Alfred and Ruth Berglund to Alfred's sister, Jeanette Gilbert, because of the common ownership of the parcels prior to that time. The plaintiffs claim that they adversely possessed the strip of land in question from at least that time to July 22, 1976, a short time before the county survey was completed.

The trial court held that the time period should not begin to run until October 17, 1962, when John Murray acquired the south 40 acres, because the Berglunds' possession of the disputed strip of land until that time was permissive, and thus did not fulfil the requirement of hostility. If so the 15–year period was not over before the initiation of the present proceedings on April 21, 1977. The trial court based its ruling that the adverse possession time period did not begin

___

indicated that knowledge of this true boundary line by the one sought to be estopped was not a necessary element under the estoppel theory of practical location. *See, e. g., Theros v. Phillips*, 256 N.W.2d 852, 859 (Minn.1977); *Simms v.*

*Fagan*, 216 Minn. 283, 289 90, 12 N.W.2d 783, 786 87 (1943). We thus conclude that the trial court was correct in not addressing the issues of estoppel and agreement.

to run while Jeanette Gilbert held the south 40 acres in part on an inference that possession is presumed not to be hostile when the possession is by a close family member.

 We agree with the trial court. The general rule of law is that "the existence of a close family relationship between the claimant of land and the record owner . . . create[s] the inference, if not the presumption, that the original possession by the claimant of the other's land was permissive and not adverse . . . ; and that when such original use was thus permissive it would be presumed to continue as permissive, rather than hostile, until the contrary was affirmatively shown." *Norgon v. Whitehead*, 225 Minn. 379, 383, 31 N.W.2d 267, 269 (1948); *see Lustmann v. Lustmann*, 204 Minn. 228, 283 N.W. 387 (1939). In this case no evidence was introduced to rebut the inference that the Berglunds' possession, if any, of the strip of land in dispute was permissive during the time Alfred Berglund's sister owned the property.[3] Thus, the trial court was correct in ruling that the fifteen year time period did not begin to run until after the Gilberts had transferred to John Murray on October 17, 1962.

 However, even assuming that the running of the statutory period began on July 22, 1961 and could have been completed before this action, there is an absence in the record of clear and convincing evidence as to the location of any line to which plaintiffs and their predecessors–in–interest adversely possessed. We have carefully considered the facts and conclude that they support the trial court finding that actual, hostile, and perhaps, in some instances, exclusive possession of the disputed strip of property by the Wojahns and their predecessors–in–interest was lacking.

The plaintiffs further claim that the part of the road that extends over defendants' land and that leads to the south access to plaintiffs' house has been dedicated to public use either through Minn.Stat. § 160.05 (1978) or through common–law dedication.

The disputed driveway is an extension of 165th Street in May Township. The street was requested by one of the plaintiffs' predecessors–in–interest in 1931, and it extends to the north–south fenceline somewhere near the northeast corner of defendants' property and the southeast corner of plaintiffs' property. The road was upgraded in 1961 and 1962 to provide John Murray with access to his home on the south 40 acres. In doing so the road was extended westward several yards past the north–south fenceline. Plaintiffs immediately began using this extension for access to their property when they lived in a trailer on the premises in 1964. Plaintiffs had a driveway branching north off the extension of 165th Street put in for them in 1964, when they were excavating the basement for their house. In addition to the Wojahns and the Johnsons using the disputed road for access, Wallace Carlson, an oil distributor, testified that he made fuel deliveries to plaintiffs several times each winter. Loren Friberg, a neighbor, testified that he had seen several hunters use the road. Mr. Wojahn testified that occasionally cars would come to a dead end and turn around. In addition, the person in charge of road maintenance in May Township from 1957 to 1962 and from 1964 to the present testified that he occasionally would grade the entire street and extension and plow the snow off in the winter. However, it was brought out at trial that the maintenance of the driveway was not authorized by the town board.

 In order to prove dedication by statutory user under Minn.Stat. § 160.05 (1978), one must show that for a period of six years continuously the public used the road and the government kept it in repair. *See Moritz v. Town of Burns*, 292 Minn. 165, 193 N.W.2d 620 (1972). Proof of a common–law dedication is quite similar to proof of a statutory dedication.[4] The one seeking

---

3. This fact distinguishes *Malone v. Malone*, 88 Minn. 418, 93 N.W. 605 (1903), in which the inference was rebutted by evidence that a parol gift of land was made.

4. Among the differences between statutory and common‑law dedication, however, is that no specific time period of public use and maintenance is required for a common‑law dedica‑

to prove a common–law dedication must show the landowner's intent, express or implied, to have his land appropriated and devoted to a public use, and an acceptance of that use by the public. *See Bengston v. Village of Marine on St. Croix*, 310 Minn. 508, 509, 246 N.W.2d 582, 584 (1976); *Bartlett v. Stalker Lake Sportsmen's Club*, 283 Minn. 393, 168 N.W.2d 356 (1969); *Daugherty v. Sowers*, 243 Minn. 572, 68 N.W.2d 866 (1955). Both intent and acceptance can be inferred from longstanding acquiescence in the right of the public to use the road and from acts of public maintenance.

 The question of public dedication is one of fact, and a trial court's determination on the matter will not be reversed unless it is clearly erroneous. *See, e. g., Bengston v. Village of Marine on St. Croix*, 310 Minn. 508, 246 N.W.2d 582 (1976); *Bartlett v. Stalker Lake Sportsmen's Club*, 283 Minn. 393, 168 N.W.2d 356 (1969). The trial court's holding that there was no statutory dedication was based on his conclusion that the town board had not authorized maintenance of the driveway, and that any maintenance performed was merely a favor to the landowners involved. We cannot conclude that his determination was clearly erroneous. *See Moritz v. Town of Burns*, 292 Minn. 165, 168, 193 N.W.2d 620, 622 (1972). We also conclude the trial court was not clearly erroneous in holding that the evidence of public use and maintenance was insufficient to prove common–law dedication.

 On the basis of factual findings and legal conclusions that placed the driveway on defendants' property and found no easement, either public or private, in favor of plaintiffs, the trial court enjoined any continuing trespass by plaintiffs on defendants' 40–acre parcel. The question of the propriety of the issuance of the injunction is not addressed by the parties. We, however, believe that the interests of justice require that we address this question sua sponte. *See* Minn.R.Civ.App.P. 103.04. It

is true that in the ordinary run of cases a "[p]ermanent injunction is a proper remedy to restrain a continuous and repeatedly threatened trespass." *Theros v. Phillips*, 256 N.W.2d 852, 859 (Minn.1977). However, injunction is an equitable remedy, involving the equitable jurisdiction of the court, and an injunction should not be issued where it would be grossly inequitable to do so. The most common situation in which a court has discretion to deny an injunction against future trespass is when a landowner has built a structure that slightly encroaches on his neighbor's property. The equity court may deny an injunction requiring the removal of the structure if the structure does not irreparably injure the neighbor's property, was innocently made, and where the cost of removal would be great compared to the inconvenience caused the neighbor by the continuance of the encroachment. *D'Andrea v. Pringle*, 243 Cal.App.2d 689, 695, 52 Cal.Rptr. 606, 610 (1966); *see Graven v. Backus*, 163 N.W.2d 320, 325 (N.D.1968).

 We can find no case where this principle has been applied to a right–of–way over a road, but we feel that a balancing of the equities is more just than the automatic grant of an injunction as is typically the case. In the present case, plaintiffs have relied on the use of the driveway for access to their home for a number of years and it is apparently at present the only means of egress and ingress to their home. The record shows that the long continued reliance by plaintiffs on the use of the road was innocent; the parties in the case did not know the exact location of the boundary line until the completion of the 1976 and 1977 surveys. In addition, the record suggests that there will be no irreparable harm to defendants if plaintiffs are allowed to continue their long reliance on the use of the road. The defendants themselves use the driveway for access to their home, and the plaintiffs' use is essentially cumulative. It is not clear, from this record that the cost to the plaintiffs of providing

tion. All that is required is that intent and acceptance coincide, and thus dedication may be made instantly. *See Bengston v. Village of*

*Marine on St. Croix*, 310 Minn. 508, 509, 246 N.W.2d 582, 584 (1976).

alternative access to their house would outweigh the inconvenience to the defendants of the plaintiffs' use of the driveway. The plaintiffs asserted at oral argument that they could not reasonably construct any alternative access to their home.[5] The defendants asserted the contrary. Since this whole question is remanded to the trial court for further consideration, evidence on this point may be introduced on remand. If the trial court concludes that an injunction is not required under the facts of this case, the defendants may on remand seek the remedy of damages which will compensate them for plaintiffs' future use of the driveway in the nature of an easement for ingress and egress to their home. If damages are sought, the measure of such damages should be the difference in value of the defendants' property with or without such future use. *See also Bandike Associates, Inc. v. B. B. M. Realty,* 44 App.Div.2d 622, 623–24, 353 N.Y.S.2d 558, 560–61 (1974). We therefore vacate the injunction issued below enjoining plaintiffs from trespassing on the northwest quarter of the southeast quarter of Section 8, Township 31 North, Range 20 West and the case is remanded to the trial court for its further consideration.

Affirmed in part; reversed in part and remanded.

AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

**5.** At trial the plaintiffs' attorney objected to evidence concerning any alternative access, and this objection was sustained. However, we do not feel that this objection should preclude plaintiffs from introducing evidence on this subject on remand, since they could not have anticipated the extension of the law we now announce in this case.