**Bernardine R. MEYERS, Respondent,**

v.

**Robert M. MEYERS, Appellant.**

**No. C3–84–2124.**

Court of Appeals of Minnesota.

May 28, 1985.

Review Denied July 17, 1985.

James R. Forsythe, Winona, for appellant.

Wallace Sieh, Winona, for respondent.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

RANDALL, Presiding Judge.

This appeal is from a judgment finding respondent the owner of the disputed property (family home) through adverse possession. We reverse and remand to the trial court to hold an ancillary hearing to determine ownership rights in Minnesota real estate which was not mentioned in a foreign jurisdiction divorce decree and to consider equitable claims raised by respondent.

## FACTS

Respondent Bernadine Meyers and appellant Robert Meyers were married in 1940. In 1947 they moved into Robert's father's house in Winona. During that year, the Meyers, their three children, and Robert's father lived together in the house. In 1937

Robert's parents had deeded the property to him, reserving a life estate.

In 1948, Robert enlisted in the army and moved to California. His family remained in Winona, living in the home and caring for Robert's father. Robert returned for visits in December 1948 and spring 1949 and 1950.

Robert's father died in October 1950, and Robert returned to Winona for the funeral. During that visit, Robert and Bernadine argued. When the argument became violent, Bernadine called the police, and Robert was removed from the house by the authorities.

In 1954 Robert obtained a divorce in California. The decree did not mention the real estate, and no attempt at property division was made. Therefore, until this suit, neither party moved to amend the California decree or make any claims in a Minnesota court relative to the real estate.

Robert paid child support until 1957. In 1957 a dispute arose over the support. In a mediation attempt, a United States Army officer wrote Bernadine on Robert's behalf. He proposed that Robert pay $100 per month as child support, and deed the house to Bernadine. In exchange, she would return some personal property to Robert. Bernadine never replied to the offer. She testified that she made no reply on an attorney's advice.

Bernadine made significant improvements to the house in 1950. In addition, she has maintained the house and made minor repairs since that time. Robert paid the property taxes on the house through the first half of 1960, but Bernadine has paid the taxes since then.

Robert did not return to Minnesota from the time of his father's funeral in 1950 until 1979. In 1979 he indicated to Bernadine and the children that he thought he had deeded the house to the children. When informed otherwise, he told them he wanted the children to have it. When the children suggested he deed it to Bernadine instead, he said, "I'll burn it down first." Robert instructed local authorities to begin sending property tax statements to his California address, and Bernadine brought this action asking either for an equitable division of the property or reimbursement for improvements made, or for a declaration that she owned the property by virtue of adverse possession. The trial court ruled only on the adverse possession issue, finding that Bernadine owned the property.

## ISSUE

Was the evidence sufficient to sustain the trial court's finding that Bernadine acquired ownership of appellant's house by adverse possession?

## ANALYSIS

To establish title by adverse possession, the adverse possessor must show by clear and convincing evidence an actual, open, hostile, continuous, and exclusive possession for 15 years. *Wojahn v. Johnson*, 297 N.W.2d 298 (Minn.1980); Minn. Stat. § 541.02 (1984). At least from 1950 to 1979, Bernadine's possession was actual, open, continuous, and exclusive. All five elements are equally necessary, however, and if her possession was not hostile to Robert's title, her claim must fail.

Robert contends Bernadine's possession of the house throughout the more than 15 years was permissive. The *Wojahn* court said:

> The general rule of law is that the existence of a family relationship between the claimant of land and the record owner * * * creates the inference, if not the presumption, that the original possession by the claimant of the other's land was permissive and not adverse * * *; and that when such original use was thus permissive, it would be presumed permissive, rather than hostile, until the contrary was affirmatively shown.

*Id.* at 306.

Here, the facts, as well as the "inference" referred to in *Wojahn*, establish that Bernadine's initial possession of the property was permissive. Once initial possession is permissive, proof of the inception

of possession which is hostile to the record owner's title must be clear and unequivocal.

> Where the original entry is permissive, the statute does not begin to run against the legal owner until an adverse holding is declared and notice of such change is brought to the knowledge of the owner. * * *. While it is true that assertion of adverse title need not be always expressly or affirmatively declared, but may be shown by circumstances, * * * proof of inception of hositility must in all cases be clear and unequivocal.

*Johnson v. Raddohl*, 226 Minn. 343, 345, 32 N.W.2d 860, 861 (1948).

The trial court found that the 1950 argument after which Robert was removed from the house was a declaration of Bernadine's adverse holding, of which Robert had notice. We disagree. Because one spouse has the other removed from the home during a domestic dispute does not mean that the spouse who remains in the home now possesses the house adversely to the ejected spouse's title. Such a holding could substantially interfere in property rights between married couples. Courts could become reluctant to allow the legitimate temporary relief of ejectment that spouses are entitled to if they show domestic abuse because of concerns over alienating title.

Robert continuously paid all real estate taxes due until 1960, which period includes ten years after the argument in the home. During those ten years, there was neither oral nor written indication from Bernadine that she claimed the house as hers, and she allowed Robert to pay the real estate taxes while she and the children continued to live there. The 1950 incident simply did not rise to the level of a declaration of an adverse holding strong enough to commence the 15-year period needed to claim under adverse possession.

Bernadine argues that, even if the 1950 incident did not rise to that level, her failure to respond to the 1957 offer Robert made through a mediating army officer did. The *Johnson* court stated, however, that *notice* of a declaration of an adverse holding must be brought to the attention of the record owner. *Id.* at 226 Minn. at 345, 32 N.W.2d at 861. If Bernadine's silence was, in her own mind, a declaration that she held the property adversely to Robert's title, she never gave him notice of her intent. Again, for at least three years after Robert's offer, he continuously paid the real estate taxes on the home with no indication by her that she claimed partial or full ownership adversely to Robert. The 1957 support and property settlement negotiations could not, therefore, start the running of the 15-year period.

After 1960, Robert stopped paying the property taxes. Bernadine never took any steps, however, to give him notice that she was claiming the property as her own. Although equitably a strong argument can be made that Robert abandoned the property, the law is clear that legal title to realty is never lost by abandonment. *See, e.g., Smith v. Glover*, 50 Minn. 58, 52 N.W. 210 (1892); *City of Fergus Falls v. Whitlock*, 247 Minn. 347, 77 N.W.2d 194 (1956).

At trial, Bernadine testified that she never told Robert prior to the commencement of this lawsuit that she felt she owned the house, and that she never told anyone else that she felt she owned the house. She testified that she, in fact, never claimed to have title to the property, and that neither while raising the children nor after they grew up did she do anything different with the house that might reasonably put Robert or anyone else on notice that she was asserting an ownership claim. Bernadine has failed to show that her permissive use of the property became hostile, and thus the finding of adverse possession cannot be sustained.

Although we rule against Bernadine on her claim of adverse possession, we sympathize with her position. Bernadine was the sole parent to the parties' three children after Robert left. She maintained and improved the house by herself and paid the taxes by herself after 1960. The trial court did not rule on Bernadine's claims for eq-

uitable relief or for relief under Minnesota Statutes Chapter 518. We therefore remand this matter to the trial court so that Bernadine may have an opportunity to argue her equitable claims and present her evidence as to why there should be a division of the omitted property.

## DECISION

Reversed on the issues of adverse possession, and remanded to the trial court to consider respondent's other claims.