Leo LECHNER, et al., Appellants,

v.

John ADELMAN, et al., Respondents.

Nos. C5-84-2254, C6-85-541.

Court of Appeals of Minnesota.

June 18, 1985.

Review Denied Aug. 29, 1985.

Gerald W. Von Korff, Rinke, Noonan, Grote & Smoley, St. Cloud, for appellants.

Roger D. Neils, Hoolihan & Neils, St. Cloud, for respondents.

Considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Appellants, who hold title to the north half of a quarter section of land in Benton County, brought a quiet title action against respondents, who hold title to the south half of the quarter section, seeking a determination that appellants had obtained title by adverse possession to a triangular strip of land in the south half amounting to about six acres. The trial court found the evidence insufficient to establish adverse possession and awarded judgment to respondents. We affirm.

## FACTS

This case involves a dispute about the proper boundary line between parties who hold title to the north and south halves of the Southeast Quarter of Section 13, Township 36, Range 31, Benton County. Appellants, owners of the north half, sought to establish title by adverse possession to a triangular strip of land extending into the southern half to a fence erected on respondents' land. The fence runs northeast

about two thirds of the way across the southeast quarter, beginning about 205 feet south of the line that divides the halves of the quarter section and tapering to approximately 14 feet south of the line. The western third of the triangle is wooded land, the center third is swamp, and the eastern third is tillable land, referred to at trial as the "grassy strip" that extends the fence line to the end of the quarter section.

Emil and Mary Packert bought the south half of the quarter section in 1941. The fence in question was on the property when they purchased it. Appellants Leo and Ella Lechner bought the north half of the quarter section in 1959; Leo testified that he thought when he bought the property that the southern boundary extended to the fence. He rebuilt the fence and used the land for woodcutting, pasture, hay, and crops. In 1977 he transferred a section of land, which purported to include a small portion of the Packert land, to his son and daughter-in-law, Leon and Debra Lechner, who built a house there.

Emil Packert died in 1967, and Mary Packert died in 1979. The Packert farm was left equally to their daughters, Donna Adelman and Frances Adelman. Frances and her husband Lester subsequently sold their interest in the farm to Donna and her husband John.

In 1981 the boundary error came to light when a survey was performed because Donna and John Adelman desired to sell a strip of land on the northernmost portion of the farm. The survey revealed that the line dividing the quarter halves runs through the center of Leon Lechner's garage. The Lechners subsequently brought this action to quiet title by adverse possession. Before trial the parties agreed that Leon and Debra Lechner's home and the landscaped area around it would be awarded to Leon and Debra Lechner.

At trial Leo Lechner testified that in 1960 Emil Packert rented 17 acres of wooded land from him, which included a portion of the wooded section in dispute. Stella Thoen, age 87, testified that her father, who had owned the Packert farm before the Packerts, built the fence originally to corral horses. A neighbor testified that Emil Packert and Jack Heltemes, who then rented the land now owned by the Lechners, discussed the location of the fence at a neighborhood meeting sometime between 1942 and 1947 and agreed the line was off. She testified that Packert agreed to let Heltemes use the land anyway.

John Adelman testified that immediately after Lechner rebuilt the fence in 1959 or 1960, Emil Packert's brother Henry told Emil about it, and Emil said the fence was in the wrong place and he "had to talk to Leo about it." Leo Lechner acknowledged that he had a conversation with Packert at the time the fence was rebuilt, but he did not testify about the substance of the conversation. Adelman also testified that while hunting with Emil about two years later, Emil told him not to worry about crossing the fence line because Emil owned the land and "Leo knows it."

Adelman further testified that in 1977 when Leon Lechner began building his home, ten years after Emil Packert had died, Mary Packert expressed concern that the house was very close to the boundary line and said, "we are supposed to get back" the land north of the fence. She said Emil told her the line was 186 feet from the fence.

Finally, both Donna and John Adelman testified that when they first discussed the survey with Leo Lechner, he acknowledged that Emil's brother Henry had told him the fence line was off. Leon Lechner subsequently offered to buy the land from the Adelmans.

The trial court found that the Lechners had failed to establish title to the disputed land:

> Plaintiffs have been in open, actual, continuous and exclusive possession of that portion of the Southeast Quarter of Section Thirteen (13) lying north of the Fence and its northeasterly extension since 1959. The evidence in this case is insufficient however to establish clearly and convincingly that the occupancy of

Plaintiffs has been hostile. The testimony of the witnesses for Defendants tends to show that *the occupancy of Plaintiffs and their predecessors in title was permissive at its inception and that no notice of any change in the character of Plaintiffs' occupation was brought to the knowledge of the Defendants. The evidence of Plaintiffs' occupation of the property are specifically found not to be so inconsistent with a permissive use of the property as to constitute hostile occupation.* \* \* \* Defendants should therefore have title to Defendants' Property, free of any claim of title \* \* \* on behalf of the Plaintiffs \* \* \* except that portion included within the yard of the Leon and Debra Lechner Homesite as stipulated and found above.

(Emphasis added). The court ordered a survey of Leon and Debra Lechner's homesite, which was accepted by the parties and subsequently incorporated into an amended judgment.

## ISSUE

Did the trial court err in finding the evidence insufficient to establish appellants' adverse possession?

## DISCUSSION

■ Before title by adverse possession can be obtained, the disseizor must show, by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for the statutory 15-year period. *See Engquist v. Wirtjes,* 243 Minn. 502, 504, 68 N.W.2d 412, 415 (1955); Minn.Stat. § 541.02 (1984). The evidence must be strictly construed, "without resort to any inference or presumption in favor of the disseizor, but with the indulgence of every presumption against him." *Village of Newport v. Taylor,* 225 Minn. 299, 303, 30 N.W.2d 588, 591 (1948).

■ The trial court found that the Lechners' occupancy of the land was permissive at its inception. If use is permissive at its inception, it must become adverse to the knowledge of the owner of the servient estate before any prescriptive rights can arise. *Ehle v. Prosser,* 293 Minn. 183, 191, 197 N.W.2d 458, 463 (1972) (quoting *Dozier v. Krmpotich,* 227 Minn. 503, 507, 35 N.W.2d 696, 699 (1949)). In such a case, the disseizor's use is presumed to continue as permissive, rather than hostile, until the contrary is affirmatively shown. *Wojahn v. Johnson,* 297 N.W.2d 298, 306 (Minn.1980) (quoting *Norgong v. Whitehead,* 225 Minn. 379, 383, 31 N.W.2d 267, 269 (1948)); *see also Meyers v. Meyers,* 368 N.W.2d 391 (Minn.Ct.App.1985). "Permission" denotes the owner's grant of permission in fact, rather than mere acquiescence or failure to assert paramount rights. *See Ehle,* 293 Minn. at 191, 197 N.W.2d at 463.

■ The record shows that Emil Packert "rented" a portion of his own land from Leo Lechner; it also tends to show that Emil and Mary Packert had reached an understanding with the Lechners and their predecessors about using the land up to the fence. It is for the trial court to resolve conflicts in testimony and evaluate the credibility of witnesses. *See, e.g., Wojahn* at 303. Viewed in the light most favorable to the judgment, the evidence is sufficient to support the trial court's finding that Emil Packert actually permitted the Lechners' use of the disputed land and that their use of the land was not so inconsistent with permissive use as to constitute hostile occupation for the statutory period.

## DECISION

The trial court did not clearly err in finding the evidence insufficient to establish appellants' adverse possession of respondents' land.

Affirmed.