*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1135**

In the Matter of the Petition of George K. Lovrien
for an Order Determining Boundary Lines.

**Filed March 21, 2016
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-ET-CV-13-417

Mark W. Kelly, Kelly Law Offices, Excelsior, Minnesota; and

Keith Hanratty, Minneapolis, Minnesota (for appellant George Lovrien)

Katherine L. Wahlberg, Thomas B. Olson, Olson, Lucas & Redford, P.A., Edina, Minnesota (for respondents John and Suzanne O'Donnell)

Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

In this boundary-line dispute, appellant landowner challenges the district court's confirmation of the examiner of title's report, arguing that the examiner's determination of the boundary line was clearly erroneous. We affirm.

## FACTS

Appellant George Lovrien and respondents John and Suzanne O'Donnell are neighbors on the southern shore of Lake Minnetonka in Shorewood, Minnesota. They dispute the location of the common boundary line between their properties. The legal descriptions do not conflict, but the parties dispute its location on the ground.

Both parcels are located in the plat Sampson's Upper Lake Park (the plat) which was created in August 1881. The O'Donnell parcel is located in Block 3 of the plat, and the Lovrien parcel is a vacated street between Blocks 2 and 3. The northern boundary of the properties is the Lake Minnetonka shoreline, and the southern boundary is Edgewood Road. The O'Donnell parcel is an abstract property that is approximately 30 feet wide on the shoreline and approximately 47 feet wide near Edgewood Road. The O'Donnell residence is located on the O'Donnell parcel. The Lovrien parcel is a Torrens property with approximately 21 feet of lakeshore. The Lovrien parcel is used solely for lakeshore access as the Lovrien home is located directly south of Edgewood Road.

There are numerous difficulties in determining the location of the boundary line due to the age of the plat. The plat was created in 1881 and does not conform to modern standards. The entire neighborhood was created in relation to a single stone monument, which cannot be located. Additionally, over a span of many years multiple surveys have been done by various individuals, many of which conflict with each other.

The district court referred the case to the examiner of titles pursuant to Minn. Stat. § 508.671 to determine the correct location of the boundary line. A two-day trial was held. One surveyor testified on behalf of each side: Brent Peters for appellant and Larry Couture

for respondents. The difference in the boundary line which each established occurred as a result of the manner in which they proceeded to do their work. Couture relied on a 1977 survey by Gordon Coffin which was a retracement of a 1945 survey done by George Budd (the O'Donnell line). Peters conducted a retracement survey and relied on a 1997 survey by James Parker, field notes from the George Budd survey, and field notes from 1913 related to a survey by Egan, Field and Nowak which located a fence alleged to be the centerline between Blocks 1 and 2 of the plat (the Lovrien line). Neither expert opinion relied on the original stone monument as a starting point because it could not be located.

The O'Donnell line intersects the southern boundary line of the properties 323 feet from the government section corner at a 90° angle.[1] The Lovrien line intersects the southern boundary line 326.35 feet from the section corner at an 89º13'24" angle. The O'Donnell line is marked by two-inch diameter irons. The examiner concluded the irons were set by Budd in 1945 and are "the oldest irons intended to monument the location of the East line of Block 3." The Lovrien line is marked by aluminum headed monuments set by Parker in 1997.

The examiner issued a report and recommendation which included 58 detailed findings of fact, accompanied by a thorough memorandum of law. The examiner opined that the O'Donnell line marked the correct location of the boundary between the properties. Lovrien disputed the examiner's recommendation, and a hearing was held before the

---

[1] The section corner is the southwest corner of Block 3. In the 1930s, during the WPA Re-Survey program, the government section corner was re-monumented. The examiner determined this is the only marking on the plat that can be determined without making assumptions.

3

district court. The district court ultimately adopted the report and recommended findings of fact and conclusions of law as its own, accompanied by a thorough memorandum of law which addressed Lovrien's challenge to the examiner's report and recommendation.

## D E C I S I O N

On appeal, Lovrien challenges the determination of the location of the boundary line. The district court adopted the examiner's findings of fact in their entirety, and, therefore, they are considered as the findings of the district court. Minn. R. Civ. P. 52.01. "A [district] court determination as to a disputed boundary is one of fact, and will be accorded the same deference as factual determinations in other cases." *Wojahn v. Johnson*, 297 N.W.2d 298, 303 (Minn. 1980). "Our scope of review of the district court's placement of the boundary is whether the district court's factual findings are clearly erroneous and whether the district court erred in its legal conclusions." *Ruikkie v. Nall*, 798 N.W.2d 806, 814 (Minn. App. 2011), *review denied* (Minn. July 19, 2011). "[W]hen two competent surveyors disagree as to where a boundary line should be, the [district] court's determination as to which surveyor is correct depends mainly on each surveyor's credibility and will not be reversed if there is reasonable support in the evidence for such a determination." *Wojahn*, 297 N.W.2d at 303.

The general legal principle regarding surveying techniques is that, when possible, boundary lines must be determined in relation to original monuments or landmarks. *See Wojahn*, 297 N.W.2d at 303-04 ("It is proper surveying techniques not to use [an alternative measuring] system until all efforts at finding the location of an obliterated monument by collateral evidence have failed.") (citing *United States v. Doyle*, 468 F.2d 633 (10th Cir.

4

1972)). Lovrien argues that the district court erred in its legal conclusion because it did not rely on the centerline fence between Blocks 1 and 2 as a starting point even though appellant's expert testified the centerline fence was a point traceable to the original stone monument. *See Erickson v. Turnquist*, 247 Minn. 529, 532, 77 N.W.2d 740, 742 (1956) ("Since the location of lots, streets, and alleys within a plat is determined by their relation to the original monuments and landmarks of the plat, it must be apparent that the proper point from which to commence a survey to determine the boundary line between lots within an addition is an original or properly relocated monument or landmark within the addition itself, or from a point directly and accurately traceable to such a monument or landmark.").

However, surveyors are not bound by insufficient evidence of an original monument and, in the present case, it is undisputed that the original stone monument could not be found. *Wojahn*, 297 N.W.2d at 304. Because the stone monument could not be found, the examiner had to evaluate conflicting evidence regarding whether the centerline fence between Blocks 1 and 2 was a point directly and accurately traceable to the stone monument and make a factual finding. We defer to a district court's factual findings and will not reconcile conflicting evidence as it is exclusively the province of the fact-finder. *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004).

It is clear from reviewing the examiner's findings that the examiner considered Lovrien's argument that the centerline fence was a point directly and accurately traceable to the original monument, and, after hearing testimony and carefully reviewing all the evidence, the examiner rejected that argument. And the district court did not clearly err when it doubted the usefulness of the centerline fence as a starting point.

The remainder of Lovrien's arguments center on the credibility of the two experts. Lovrien spends a large portion of his brief detailing the testimony of his expert, Brent Peters, asserting that Peters' opinion was more credible than Larry Couture's opinion. As previously stated, we do not decide issues of witness credibility. *Gada*, 684 N.W.2d at 514.

Lovrien does not clearly identify specific factual findings as clearly erroneous, but nonetheless asserts the determination of the boundary line was error. In order to warrant reversal, factual findings must be "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* We do not reweigh the evidence. *Alam v. Chowdhury*, 764 N.W.2d 86, 89 (Minn. App. 2009). "Rather, we look to the record for evidence that could reasonably support the findings of the district court." *Rogers v. Moore*, 603 N.W.2d 650, 658 (Minn. 1999). The record supports the district court's findings, and we find the examiner's approach to be reasonable. In the absence of the original monument, the examiner determined the best starting point for determining the boundary was the government section corner, noting that the section corner and the sections lines are "the only markings on the plat that can be located without making assumptions or interpretations." The examiner also relied on the oldest known survey work and monumentation of Block 3, which included irons laid by Budd in 1945 physically marking the boundary. It is evident in the findings of fact and accompanying memorandum that the examiner carefully considered a substantial amount of conflicting evidence and made credibility determinations to determine the location of the disputed boundary line. There

6

is evidence in the record to support the determination, and therefore, we will not disturb the district court's adoption of the examiner's report and recommendation on appeal.

**Affirmed.**