# CITY OF FERGUS FALLS v. G. HARRY WHITLOCK.

77 N. W. (2d) 194.

May 18, 1956—No. 36,643.

*Henry Nycklemoe* and *Leonard Eriksson,* for appellant.
*Philip R. Monson,* City Attorney, for respondent.

MURPHY, JUSTICE.

This is an action in ejectment brought by the city of Fergus Falls against the defendant, G. Harry Whitlock, for the recovery of certain property in the area designated as Reserve 82 in the city of Fergus Falls. The trial court found for the plaintiff, and defendant appeals from a denial of his motion for amended findings of fact, conclusions of law, and order for judgment or in the alternative for a new trial.

The first of the two tracts of land in question was originally deeded to the city by the Wright Holding Company for a one-dollar consideration on December 1, 1938, and was defined by the following legal description:

"The West One Hundred (100) feet of Reserve Eighty-two (82), also that part of Reserve Eighty-two (82) lying north of the South line of Deak Avenue."

This deed was filed and duly recorded in the office of the register of deeds on October 7, 1939. The second tract was conveyed to the city, also for the sum of one dollar, apparently by successors in

interest of the Wright Holding Company on April 3, 1944, and was described in the deed as follows:

"All of Reserve Eighty-two (82) except tract to Northwestern Sash & Door Co., and except the West one Hundred feet (W. 100 ft.) and except that part lying North of Deak Avenue."

This latter deed, which conveyed the remaining interests in Reserve 82 of the Former Wright Holding Company, was filed and recorded in the register of deeds office of August 2, 1944. Both of the above-described deeds contained the following restriction as to use:

"It is expressly understood and agreed that the above premises shall be used only for park and for recreational purposes, and that they shall not be used for commercial purposes."

In May of 1947, the defendant was engaged in the business of selling welding and hospital supplies. His establishment was located on Junius Avenue in the city of Fergus Falls. The defendant alleged in a counterclaim, which was later abandoned, that he had been forced by the city to vacate this location and dispose of the property for an inadequate consideration. While the circumstances of the removal of his establishment from the Junius Avenue site to the location involved here, which he now occupies, are not fully contained in the record, it appears from the pleadings and offers of proof submitted by the defendant that the city officials of the city of Fergus Falls required him to discontinue his business at the former site because they desired to have someone else build at that location. He had secured a building permit for the purpose of adding to his facilities at the Junius Avenue East site, but this permit was later canceled, and it appears from the defendant's claims that the city officials, with the idea of lessening the inconvenience caused by the required change, permitted him to move his shop to the site in Reserve 82 which he now occupies. He contends that the city officials not only knew and consented to the transfer of his business operations to the site in question but that they approved of the change of location and cooperated with him by giving him a moving permit; that they supervised the moving of the building; and that the city

engineer designated the boundaries of the property he was to occupy and also surveyed and staked out the area for that purpose. After operating for some time at the new site, the defendant began the erection of a new structure which has been halted pending the outcome of this litigation. The defendant does not contend that the conduct of the city officials in permitting him to occupy the present premises was authorized pursuant to any official action taken by the city government.

After Whitlock occupied the location in Reserve 82 he became aware of the fact that the land was held by the city subject to the condition that its use was limited to park and recreational purposes. He now bases his claim of title to the property on a quitclaim deed which he received from the Wright interests on July 19, 1950. This deed, of course, is subsequent to the two deeds given to the city in 1938 and 1944. Whitlock paid $200 for this quitclaim deed and it was recorded on September 12, 1950. The deed purported to convey the following:

"That part of the East 75 feet of Reserve 82 lying north of the South line of Deak Avenue extended, and west of and adjoining the West line of Sherman Avenue, in the City of Fergus Falls, Minnesota, according to the plat thereof on file and of record at the Office of the Register of Deeds of Otter Tail County at Fergus Falls, Minnesota."

The deed also contained the following provision:

"This deed is given to release the above described portion of said Reserve 82 from the restriction as to use contained in the deed from the Wright Holding Company to the City of Fergus Falls dated December 1, 1938."

When this deed was recorded it was placed on the tax rolls as a matter of course and defendant subsequently paid taxes on the property.

Although defendant's "ASSIGNMENT OF ERRORS" includes 24 points, we will concern ourselves here with the issues which we deem to be decisive. His first principal contention is that the two deeds under

which the city claims title were not accepted as required by M. S. A. 1945, § 465.03, and, as a result, the city cannot show a sufficient title to permit recovery in ejectment. Section 465.03 provides that—

"Any city * * * may accept a grant or devise of real or personal property and maintain and administer such property for the benefit of its citizens in accordance with the terms prescribed by the donor. * * * Every such acceptance shall be by resolution of the council adopted by a two-thirds majority of its members, expressing such terms in full."

In the minutes of the city council the only entries which refer to the acceptance of the two deeds under which the plaintiff city claims title are found on page 730 of the council minute book dated February 6, 1939, and on page 972 dated April 7, 1944. The first deed was referred to as follows on page 730:

"Upon motion, the above two deeds [one of which is the first deed in question] were accepted and the clerk authorized to file for record with the Register of Deeds and take steps for abatement of taxes."

The second deed was referred to at page 972 of the minutes as follows:

"A Quit Claim Deed was received from Thomas C. Wright and others conveying to the city for a consideration of $1.00, all the remaining interest of the parties in and to reserve 82, Amended Plat. Same was accepted and ordered filed."

■ Although it does not expressly appear from the minutes that § 465.03 was complied with, acceptance of the two deeds in question is governed by M. S. A. 501.11(7), which provides insofar as here pertinent as follows:

"Any city or village may receive, by grant, gift, devise, or bequest, and take charge of, invest, and administer, free from taxation, in accordance with the terms of the trust, real or personal property, or both, for the benefit of * * * any public park, located in, or within ten miles of, such city or village, * * *."

The deeds in question were given to the city with the restriction that the premises be used "for park and for recreational purposes."

352

A similar devise of land to a village "to be used for a public park" was held by this court to be a valid charitable trust in Schaeffer v. Newberry, 235 Minn. 282, 50 N. W. (2d) 477, and we there held that § 465.03 is inapplicable to charitable trusts authorized under § 501.11(7). We hold that case to be controlling here. This court said in the Schaeffer case (235 Minn. 290, 50 N. W. [2d] 482):

"* * * It seems clear that the provision for acceptance by a two-thirds majority contained in § 465.03 is to prevent hasty acceptance of such grants by requiring the assent of a strong majority of the village council as a condition precedent to acceptance.

"These considerations do not apply with equal force to charitable trusts created under § 501.11(7). Only a limited and carefully selected list of charitable trusts is authorized to be created and received under that section. The select nature of these trusts is demonstrated not only by examining the nature of the authorized purposes, but also by the fact that of all the kinds of charitable trusts conceivable only these few were authorized. It seems only reasonable to suppose that the legislature intended to encourage the creation and receipt of these kinds of charitable trusts."

The entries in the city council minutes as to both deeds are sufficient to constitute their acceptance as charitable trusts.[1]

■ With reference to the defendant's claim that he has acquired title to the property by reason of the quitclaim deed from the Wright interests dated July 19, 1950, it is sufficient to state that the deed in legal effect did nothing more than perhaps release, on the part of the grantors, the covenants limiting the use of the property for park and recreational purposes,[2] since the original grantor had conveyed title to the city by its deeds of December 1, 1938, and April 3, 1944.

■ The defendant points out that, after he secured the quitclaim deed of July 19, 1950, and filed the same for record, the city was aware of the fact that he was paying taxes on the property. He argues that the city was also aware of the fact that he had incurred

[1] 1A Bogert, Trusts and Trustees, § 150.
[2] See, 21 C. J. S., Covenants, §§ 34, 75.

expense in moving and had made investments in improving the property. He concedes he could not acquire title through the actions of the municipal officers but seems to contend that because of their conduct his occupancy of the land is not wrongful.

The Municipal Charter of the City of Fergus Falls, § 72, provides that property may not be conveyed unless there be a two-thirds vote of all members of the city council. In The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244, we held that a municipal officer who did not have authority granted to him under a municipal charter or ordinance provision could not bind the city. That case involved an attempt by a city engineer to act on behalf of the city by issuing a construction permit. In reliance upon his acts, the plaintiff undertook the construction. We held (222 Minn. 319, 24 N. W. [2d] 249):

"* * * It would seem to be clear that the city council and not the city engineer is vested with the power to grant or deny an application for a permit to construct a drive-in such as the one in question. * * * The act of the city engineer, therefore, in granting the permit to plaintiffs was without authority and therefore null and void. The record does not sustain * * * the findings and conclusion of law that such power ever was delegated to the city engineer by the city council."

It is a well-established rule that estoppel as applied to a municipal corporation cannot grow out of dealings with city officials who exceed their authority.[3] The Alexander Co. case states (222 Minn. 320, 24 N. W. [2d] 250):

"A contrary rule would lead to chaos in municipal affairs. If the doctrine of estoppel could be invoked in such situations, municipalities would repeatedly find themselves bound by the unauthorized acts of officers and agents possessing only limited authority. Experience has shown the wisdom of the prevailing rule that persons

---

[3]The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244; Gontrum v. City of Baltimore, 182 Md. 370, 378, 35 A. (2d) 128, 131; 3 McQuillin, Municipal Corporations (3 ed.) § 12.126, p. 450; 6 Dunnell, Dig. (3 ed.) § 3211.

dealing with municipal officers and agents are bound by constructive notice of the law and public records with respect to the powers and functions of such officers or agents."

■ Nor does the fact that the defendant paid taxes on the property work an estoppel against the city.

"* * * the levy and collection of taxes on property will not estop a city from asserting title to the property for the public." Park Commissioners v. Taylor, 133 Iowa 453, 465, 108 N. W. 927, 931; 10 McQuillin, Municipal Corporations (3 ed.) § 28.56.

■ Part of the defendant's occupancy in Reserve 82 extends into Sherman Street which runs north and south and which bounds Reserve 82 on the east. Sherman Street, as dedicated, is 75 feet in width although the traveled portion is somewhat less than the dedicated area. Whitlock's encroachment into the street as dedicated was approximately 25 feet at the southeast point of the encroachment, extending north some 108 feet to the northeast point of the encroachment which was approximately 30 feet into the street. The remainder of his occupancy is coextensive with the property described in the first deed received by the city.

The defendant contends that he should not be ejected from this particular area because he claims it is an unopened street. There is a traveled roadway on the area dedicated as Sherman Street, but because his occupancy encroaches upon only a portion of the dedicated street, which portion is not presently being used, and his encroachment does not interfere with public travel, the defendant maintains that the city is without right to secure possession. If this contention is predicated upon the claim that Sherman Street has been abandoned by the city, the case of Village of Newport v. Taylor, 225 Minn. 299, 305, 30 N. W. (2d) 588, 592, is sufficient answer, for it was there held:

"* * * An intention to abandon is not established by negative or equivocal acts. Long-continued nonuser, in order to constitute abandonment of a public street dedicated to public use pursuant to statute, must originate in or be accompanied by some affirmative or

unequivocal acts of the municipality indicative of an intent to abandon, and inconsistent with the continued existence of, the easement."

■ The defendant implies by his argument that the city in failing to use the premises included in the two deeds has abandoned them and as a consequence thereof he obtained title through his subsequent deed. The law is clear that the ownership of a possessory interest can only be lost through transfer to another person,[4] so that a perfect title to realty is never lost solely by abandonment.[5]

Since the city acquired title to the property in issue through the valid acceptance of the two prior deeds, it has superior title to support its action for ejectment.

The order is affirmed.

Affirmed.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.

---

[4] 2 American Law of Property, § 8.98.

[5] E.g., Krueger v. Market, 124 Minn. 393, 398, 145 N. W. 30, 32; 1 Dunnell, Dig. (3 ed.) § 2.