## ROSE REALTY, INC., AND ANOTHER
### v.
### VILLAGE OF ROSEVILLE.

136 N. W. (2d) 587.

August 13, 1965—No. 39,643.

*Loftsgaarden & Loftsgaarden,* for appellants.
*Peterson, Bell & Converse,* for respondent.

OTIS, JUSTICE.

Rose Realty, Inc., and the executor of the estate of Julius L. Villaume appeal from an order of the district court denying their motion for amended findings or for a new trial in proceedings affirming resolutions adopted by the village council of Roseville reapportioning a sewer assessment levied against appellants' property.

In 1957 and 1958 the village assessed the sum of $23,260.25 against 30 acres of property then owned by Villaume, payable over a period of 20 years. The installments from 1958 through 1961 were paid. On July 26, 1962, Villaume sold 5 acres to School District No. 623 and 5 acres to the village of Roseville. On September 27, 1962, he entered a contract to sell the remaining 20 acres to Edward J. Bossard, who subsequently transferred his interest to Rose Realty, Inc., of which he was president. In anticipation of the following year's installment, Villaume and the village secured from the council on November 26, 1962, a resolution numbered 661, apportioning the balance of the installments between the 5-acre tract owned by the village and the 20-acre tract owned by Villaume.

The assistant engineer of the village testified that in apportioning the remaining assessment of $21,260.25 he inadvertently transposed the amounts due against each piece, resulting in a levy of $4,966.73 against the 20 acres owned by Villaume and $16,293.52 against the 5 acres owned by the village. As a consequence, one tract was assessed at the rate of approximately $250 an acre and the other at $3,260 an acre instead of approximately $800 and $1,000 per acre as was intended. This litigation results from steps taken by the village to correct the clerical transposition.

In January 1963 Villaume received from the county auditor a statement reflecting the erroneous apportionment. On April 30, 1963, Rose Realty, vendee of Villaume's interest, paid its assessment in full in the face of advice from the village engineer that the amount contained on the county auditor's statement was inaccurate. About a week later, the

village council by resolution No. 756 took steps to rectify the transposition adopted the previous November. Unfortunately, the mistake was compounded by sending to the county auditor a draft which neglected to deduct from the total assessment the installments already paid. A proper resolution was ultimately filed with the auditor, but the issue is raised as to which copy of the resolution was actually adopted by the village council.

Two lots were conveyed by Rose Realty to third parties who purchased without notice of the erroneous assessments. The trial court held that inasmuch as they had relied on the record and abstract the village's action as to them was ineffective.

Rose Realty appealed to the district court from resolution No. 756, dated May 6, 1963, (in evidence as exhibit K) filed with the county auditor August 7, 1963, which purported to reassess accurately the village's 5-acre tract and Rose Realty's 20-acre tract. The two issues presented to the trial court were, first, whether the village was authorized to take corrective action after the assessments had been paid in full without proceeding in the manner prescribed by Minn. St. 429.071, subd. 1; and second, whether the evidence sustains a finding that the resolution filed with the county auditor as exhibit K was the one which was in fact adopted May 6, or whether the record compels a finding that the draft first received by the auditor on May 22, 1963, designated exhibit J, was the only one acted on.

■ Although appellants refuse to concede that the reapportioned assessment of November 1962 resulted from a transposition of figures, the uncontradicted evidence conclusively demonstrates that there was no rational relationship between the resulting allocation of $250 per acre as to appellants' property and $3,260 per acre as to the village's property. Under such circumstances, there was available to the village either the procedures prescribed by § 429.071, subd. 1, or, in the absence of prejudice to those affected, it could adopt the measures it here pursued.

The appellants contend that the village could only change the assessment by the procedure prescribed in §§ 429.071, subd. 3, and 429.081, which it failed to follow. The fallacy in appellants' position is that it is predicated on the assumption the village was here acting in its proprietory

capacity as a property owner rather than in its sovereign capacity as a municipality. As we view the matter, under circumstances where a resolution is patently the result of a clerical error, the village has inherent authority to take corrective measures such as those here adopted.

While we recognize there may be instances where the interests of innocent third parties intervene, as indeed occurred in the case at hand with respect to two purchasers, or owners rely on an erroneous assessment to their prejudice, the conclusion is inescapable that here appellants, with knowledge of the transposition, sought to exploit the situation by hastening to pay the assessment with a view to establishing irrevocable rights before corrective action could be taken. The appellants were already the owners at the time the error occurred and have not shown any change in their position as a result of it. They were alerted to the mistake, if they were not already aware of it, at the time they paid the assessment in full. No reason occurs to us in logic or justice why the village should not be permitted to take the action it did when no prejudice whatever has resulted to the appellants. The findings and conclusions of the trial court with respect to this issue were, in our opinion, proper.

■ With respect to whether on May 6, 1963, the village council in adopting resolution No. 756 acted on the draft marked exhibit K or acted on the draft marked exhibit J which failed to deduct installments already paid, the trial court in its memorandum made the following observations:

"The evidence certainly raises a strong inference, or a suspicion, that there was an irregularity here, and that probably Exhibit K was never presented to the Council. However, there is a presumption that proceedings of Village Councils and other administrative bodies are regular, and, of course, there is a presumption that a certified copy, certified by the Village Clerk, is what it purports to be.

"In the opinion of the court the evidence here is not strong enough to overcome a presumption of regularity. No attempt was made to bring into court the original Council minutes, or to prove directly that there was any tampering of the records."

We agree that the evidence on this issue is unsatisfactory. There was no testimony of any kind that the correct version was actually the one on which the council acted, beyond the bare statement of the village clerk that the resolution itself so indicates. Although, as the trial court suggests, there is considerable doubt as to which draft was adopted, we affirm with some hesitation the finding that the presumption of regularity has not been adequately rebutted.

Affirmed.