**Dick KELLEY, Appellant,**

v.

**TRACY FIRE DEPARTMENT RELIEF ASSOCIATION, a corporation, Respondent.**

No. C6–86–16.

Court of Appeals of Minnesota.

July 15, 1986.

Timothy W. Nelson, Gislason, Dosland, Hunter & Malecki, New Ulm, for appellant.

James E. Kerr, Veltz, Irons & Kerr, Tracy, for respondent.

Heard, considered and decided by FORSBERG, P.J., and SEDGWICK and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from summary judgment entered awarding appellant Dick Kelley $4,000 as a pension benefit from respondent Tracy Fire Department Relief Association and thereby denying his claim to be entitled to a greater amount. We reverse and remand.

## FACTS

Kelley was a firefighter with the Tracy Fire Department and began service in 1955. In 1958, he joined the respondent Relief Association, which provides disability and death benefits, as well as pensions, to its members, in accordance with state law. Minn.Stat. § 69.06 (repealed in 1979 by 1979 Minn.Laws 201, § 44); Minn.Stat. § 424A (enacted in 1979 at 1979 Minn.Laws 201).

Kelley retired from active service with the department in May of 1975, when he completed the 20 years' service required as the initial step toward qualifying for a pension.[1] Because Kelley had not reached the age of 50, however, as required to receive his pension, he was placed on a "deferred pension roll" in accordance with respondent's bylaws.

At the meeting at which Kelley's request for retirement was approved, the association also began to consider proposed changes in the bylaws. One of the changes was an increase in pension benefits from $200 to $300 per year of service. This increase was later approved, along with a provision deferring calculation of a deferred pensioner's benefit amount until his application for a pension at age 50.

On his motion for summary judgment, Kelley submitted the affidavit of a member of the association's board of trustees, which stated:

> 6. That at the time Dick Kelley was contemplating retirement from the Tracy Fire Department, (May, 1975), the Board of Trustees was considering increasing the maximum amount of pension benefits from $4,000.00 to $6,000.00, that a retiring fire department member could receive.
>
> 7. That I told Dick Kelley, and to the best of my knowledge as a member of that Board of Trustees believe, that he would not have to wait until the new bylaws were adopted to receive the $2,000.00 increase; that he would auto-

matically be included in any benefit pay increase under the new proposed paragraph (d).

Kelley continued to pay his yearly dues, maintaining what he considered to be an active membership in the association until 1984, when he reached 50 years of age. By this time, the pension benefit had been raised to $575 per year or $11,500 for 20 years of service. When Kelley applied to the association for his deferred pension, he claimed $11,500 was the amount due him. Kelley rejected the association's check for $6,000, which the association later reduced to $4,000.

Kelley then brought this action for breach of contract. On cross-motions for summary judgment, the trial court determined that Kelley was entitled to a $4,000 pension, and ordered judgment in that amount.

## ISSUE

Did the trial court err in granting summary judgment for respondent?

## ANALYSIS

■ The trial court noted the general rule that the statute in force when the pension claim arises governs the pension right. *Butler v. Minneapolis Police Relief Association,* 283 Minn. 70, 72, 166 N.W.2d 705, 706 (1969). The court held that, because the statutes and bylaws require that Kelley reach the age of 50, as well as complete 20 years of service and 10 years of membership, his claim did not arise until his 50th birthday, and a 1984 statute applied. That statute provides in part as follows:

> The deferred service pension shall be governed by and shall be calculated pursuant to any general statute, special law, relief association articles of incorporation or *relief association bylaw provisions* applicable as of the date on which the member separated from active service

---

**1.** To actually *receive* the pension, a firefighter with the Tracy Fire Department needs a) 20 years service; b) reach the age of 50; c) make

application for the pension and have that application approved by the association.

with the fire department and active membership in the relief association.

Minn.Stat. § 424A.02, subd. 7(3) (1984) (emphasis added). The trial court then determined that Kelley was not an active member after 1975, and therefore his pension must be calculated at $4,000 based on the 1975 statutes and bylaws.

■ The supreme court has held that a pension vests when it is no longer "subject to a condition of forfeiture if the employment relationship terminates before retirement." *Janssen v. Janssen,* 331 N.W.2d 752, 753 (Minn.1983). Kelley's right to a pension vested in 1975, when he completed the service. Thereafter, he had only to wait until age 50, make application, and have the application approved. Attaining age 50 was a condition *to the maturity of his right to payment.* Thus, his claim *arose* in 1975, and it is unnecessary to consider the terms of the 1984 statute. *Cf. Butler* 283 Minn. at 72–73, 166 N.W.2d at 707 (widow had to be "residing with" employee at time of his death; therefore, law in effect at his death applied).

The trial court's memorandum did not discuss the applicable 1975 bylaw provisions concerning calculation of deferred pensions. Summary judgment is appropriate only where there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. *Donnay v. Boulware,* 275 Minn. 37, 144 N.W.2d 711 (1966). If the terms of a contract are at issue or any of its provisions ambiguous or uncertain, summary judgment is not appropriate. *In re Turners Crossroad Development Co.,* 277 N.W.2d 364, 368 (Minn.1979). We disagree with the trial court's implied conclusion that the 1975 bylaws are unambiguous. *See Lamb Plumbing & Heating Co. v. Kraus-Anderson of Minneapolis, Inc.,* 296 N.W.2d 859, 862 (Minn.1980) (appellate court is not bound by trial court's determination of whether a contract is ambiguous).

Article Eight of the bylaws in effect in May, 1975, provided as follows:

Section 1. Twenty (20) year retirement.

(a) Upon approval of the application therefore, and upon honorable retirement, active members of the Tracy Fire Department who have been such for at least twenty (20) years * * *, and who are at least fifty (50) years of age, shall be entitled to receive the sum of Four Thousand Dollars ($4,000.00) payable at the rate of Four Hundred Dollars ($400.00) per year or, if funds are available, a lump sum payment; * * * *.
(b) A member of the Association who is otherwise qualified for a pension but has not reached the age of fifty years, shall be placed on the deferred pension roll of the association, and after he has reached the age of fifty years, upon application therefor, *the association shall pay his pension from the date such application is approved by the association;* * * * *.
(c) If a fireman becomes entitled to a pension in accordance with the provision of (a) of this section but nevertheless remains active and does not retire, then, he shall be entitled to receive $240.00 for each year (or $20.00 per month for each part of a year) over 20 years he remains an active firemen, until he reaches 60 years of age. Upon approval of his application, he shall be entitled to retire and receive his service pension payable at the rate of $400.00 per year [or] if funds are available, a lump sum payment; * * * *.

(Emphasis added).

The bylaw amendment approved shortly after Kelley retired from active service added the following paragraph:

(d) If a member of this association elects to be placed on a deferred pension roll under the terms of (b) of this section and then applies for pension after having attained age fifty (50), *the total amount to which he shall be entitled shall be based upon whatever pension terms are in effect at the time he applies and not according to the terms at the time he was placed on the deferred pension roll.*

(Emphasis added).

If section 1(a) clearly applies to Kelley, then section 1(a) establishes a $4,000 pen-

sion amount for 1975 retirees. However, section 1(a) appears to be limited to those who have reached the age of 50, completed active service, and successfully applied for their pension. The pension claims of such persons both vest and mature at the same time. Section 1(a) does not specify which date to use to calculate the pension amount since, to those to whom section 1(a) applies, a specific date calculation is not necessary. The date when all three requirements have been fulfilled speaks for itself. However, Kelly does not necessarily come within only the provisions of section 1(a).

■ Section 1(b) is a special provision for those on the deferred pension roll, which Kelley was after completing his 20 years of service, but before reaching the age of 50 and applying and having his application approved. For those individuals, the association could calculate the pension as of either the date of vesting (20 years service) or the date of maturity (20 years service, plus age 50, plus approved application). The statutes in force in 1975 did not prescribe a date, and the general rule that the *right* to a pension is governed by the laws in effect when the claim arises, *Butler,* 283 Minn. at 72, 166 N.W.2d at 706, does not prevent the choice of a different date for calculation of the amount.

Section 1(b) states that the association shall pay the pension "from the date such application is approved." This language does not specifically refer to the *calculation* of the pension amount, but addressed the time of payment. If construed as referring solely to the payment of the pension, however, it is redundant, a restatement of the obvious proposition that a pensioner would not be paid until his pension application was approved. This language creates an ambiguity precluding summary judgment. Section 1(a) and 1(b) when read together are not clear as to whether the calculation of the pension amount, for those like Kelley, is computed on the date they have served 20 years or on the date they have served 20 years and have reached the age of 50 and have applied for

a pension and that application has been approved.

Section 1(d), added shortly after Kelley's retirement, required a deferred pension to be calculated as of the date of the application. According to this provision, Kelley would have received the pension benefit in effect in 1984, or $11,500.

■ Section 1(d) may have been intended to clarify the ambiguous language in section 1(b) as to the date of calculation. *See Burke v. Board of Trustees of Police Retirement System of Sioux City,* 308 N.W.2d 21, 24 (Iowa 1981) (statute passed after plaintiff's retirement was a clarification of eligibility for annual pension readjustments). The new provision may also have applied to all individuals on the deferred pension roll, thus including Kelley, because it was not expressly limited to have prospective effect. A bylaw amendment may also apply retroactively, *Diedrick v. Helm,* 217 Minn. 483, 14 N.W.2d 913 (Minn.1944), at least so long as it does not materially impair existing contractual rights. *Hueftle v. Farmers Elevator,* 145 Neb. 424, 16 N.W.2d 855 (1944).

Section 1(d) was deleted before Kelley's application was made, although there is no evidence of official action deleting the section. Even if it was properly deleted, there may be a question whether Kelley's pension could be diminished by retroactive application of a bylaw amendment. *Hueftle; see also Christensen v. Minneapolis Municipal Employees Retirement Board,* 331 N.W.2d 740, 749–50 (Minn.1983) (constitutional prohibition of laws impairing contractual obligations applies to public employees' pensions). Thus, section 1(d) also presents issues precluding summary judgment.

We also note the estoppel theory raised by the affidavit of the board member, who stated that Kelley had been informed of the pending changes which would increase his pension. Giving credibility to the factual allegations in this affidavit as required on a motion for summary judgment, it was illogical for Kelley to have retired when he

did unless he relied on the statement that he would share in the increase.

 The supreme court has recognized promissory estoppel as the proper approach to public employee pension interests. *Christensen,* 331 N.W.2d at 748. Reliance here was not on the statute or bylaws themselves but on representations of an official of the association. *Cf. Id.* at 749 (reliance on statutory retirement program). Estoppel, however, can be applied against municipal corporations based on dealings with municipal officials who act within their authority. *City of Fergus Falls v. Whitlock,* 247 Minn. 347, 77 N.W.2d 194 (1956). Although the board member may have exceeded his authority, *see In re Estate of O'Keefe,* 354 N.W.2d 531 (Minn.Ct. App.1984) (county attorney's casual oral opinion of current status of the law did not give rise to estoppel), *pet. for rev. denied* (Minn. Jan. 2, 1985), *appeal dismissed,* —— U.S. ——, 105 S.Ct. 2652, 86 L.Ed.2d 269 (1985), this question turns on factual issues, undeveloped at this stage of the proceedings and inappropriate for summary judgment.

 We remand this matter for trial on the merits of appellant's claim that he is entitled to a pension calculated at the figure of $11,500. We direct the trial court to take testimony and determine the appropriate date for calculation of the pension amount and to consider the validity of appellant's claim of estoppel.

## DECISION

The trial court erred in ordering summary judgment for respondent.

Reversed and remanded.

FORSBERG, Judge, dissenting:

I respectfully dissent. Although summary judgment is not appropriately used as a substitute for trial where there are genuine issues of material fact, *Ahlm v. Rooney,* 274 Minn. 259, 262, 143 N.W.2d 65, 68 (1966), neither should this court strain to find a triable issue. The majority opinion raises solely legal issues, none of which can

be determined favorable to appellant's claim for a greater pension benefit.

I see no ambiguity in section 1(b) of Article Eight of the 1975 bylaws, which refers only to payment of the deferred pension. An ambiguity is created only by considering the subsequently-enacted section 1(d). That language, however, was deleted before Kelley applied for his pension. I see no basis for extending its terms to one who retired before it was passed and made no pension application until after its deletion. Moreover, given the presumption of the regularity of municipal actions, *Rose Realty, Inc. v. Village of Roseville,* 272 Minn. 130, 133–34, 136 N.W.2d 587, 590 (1965), the mere possibility of improper deletion does not raise a genuine issue of fact. Finally, I would hold that as a matter of law the trustee was acting beyond the scope of his authority in making any representations to Kelly as to the effect of pending changes in the bylaws.