**United States Court of Appeals**

FOR THE EIGHTH CIRCUIT

_____

No. 96-4203

_____

Plymouth Foam Products, Inc.,      *
                                   *
          Appellant,               *
                                   *  Appeal from the United States
     v.                            *  District Court for the
                                   *  District of Minnesota
City of Becker, Minnesota,         *
                                   *
          Appellee.                *


_____

Submitted: June 13, 1997
Filed: August 12, 1997

_____

Before MURPHY, LAY, and NORRIS,[1] Circuit Judges.

_____

MURPHY, Circuit Judge.

Plymouth Foam Products, Inc. approached the city of Becker about providing economic incentives to move one of its plants there. The parties disagree over whether an enforceable agreement was ever reached and whether the representations of a city employee were fraudulent. The district court[2] granted summary judgment for the city

_____

[1]The Honorable William A. Norris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

on both the contract and fraud claims and concluded that the city was not estopped from arguing there was no contract.  We affirm.

Plymouth Foam manufactures insulation products and is owned and managed by Bradley Roberts and his two brothers.  In 1990 it began to explore the possibility of relocating the plant it then operated in Maple Grove, Minnesota.  Bradley Roberts was primarily responsible for the relocation efforts.

One potential new site for the plant was the city of Becker, Minnesota which has an Economic Development Authority (EDA) which initially considers any proposal from a company.  The EDA is an advisory body to the city council and was  established by the council with a formal resolution.  If the EDA accepts a proposal, it passes it on to the city council which is empowered to make the final decision.  In Minnesota a municipality may enter into a contract with another party only if it is authorized by the respective city council.  Minn. Stat. § 412.201 (West 1987).

David Graning is the community development director for the city of Becker, and part of his job is to act as a contact for businesses interested in operating there.  He is an employee of the city and does not sit on either the EDA or the city council.  Graning is the only person in the city administration that Roberts dealt with directly in discussing Plymouth Foam's relocation to Becker.

On June 30, 1992, Roberts submitted an application for economic assistance to the city.  The application stated that Plymouth Foam needed help in obtaining approximately $60,000 in financing to cover the gap between its available resources and the expenses associated with the move. Graning contacted the Minnesota Department of Trade and Economic Development (MDTED) to inquire about state programs which might provide the funds and was informed that money was not available for companies like Plymouth Foam which were relocating from one Minnesota city to another.

The EDA then considered and approved an incentive package for Plymouth Foam and passed it along to the city council. In July 1993 the council passed a resolution providing Plymouth Foam with land, utilities installation, and a contribution of up to $15,000 for site preparation. The resolution did not contain a guarantee for the $60,000 financing sought by the company.

In September of 1993, Roberts informed Graning that Plymouth Foam had received a more attractive relocation offer from the city of Graettinger, Iowa. In response, Graning again contacted the MDTED and discovered that since Plymouth Foam was now considering an offer from outside Minnesota, Becker could qualify for funding from the state in order to provide the company with additional financing.

In March 1994 Graning met with a representative of MDTED named Terrell Towers who stated that there was approximately $150,000 available in MDTED's economic recovery fund and that the Plymouth Foam proposal would meet the requirements for those funds. Graning says he informed Roberts of the substance of this conversation and told him that Towers made it sound like all they needed to do was fill out the application and the funds would be available. Roberts characterizes the conversation slightly differently; he claims Graning told him the state had agreed to provide the funds and they were available upon request. While Roberts realized that the city had to submit a written application to the state for these funds, his conversations with Graning led him to believe that there was a verbal agreement between the state and the city to earmark $150,000 for Plymouth Foam and that these funds were available whenever needed.[3]

---

[3]In his deposition of May 1, 1996, Roberts stated he knew the $150,000 he discussed with Graning would come from the state, not the city. In a supplemental affidavit filed after the city's motion for summary judgment, Roberts said it was his understanding that Becker would provide $150,000 whether it received the state money or not. He did not claim that this understanding was based on any specific representation made by Graning or anyone else associated with the city. To the extent that his subsequent affidavit conflicts with his earlier deposition, his affidavit testimony should be disregarded. See RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 402 (8th Cir. 1995).

After further discussions, Graning asked Roberts to write a letter which he could present to the EDA for consideration and approval. In a letter dated March 23, 1994, Roberts outlined the incentives Plymouth Foam required to relocate its plant in Becker. The letter is directed to Graning and the "Economic Development Committee" and states that Plymouth Foam intended to move to Becker "if the items below are met as we have discussed." One item is a $150,000 forgivable loan or grant to help offset moving costs and train new employees. While the source of this funding is not specifically identified, elsewhere in the letter Roberts offers to supply any material necessary to "file for the state money."

Graning then took the letter of March 23 to the EDA and presented it as a proposal for consideration. The minutes of the meeting indicate that a motion was adopted "to accept the Plymouth Foam proposal," and that the adopted motion was sent to the city council for consideration. The city council never considered or approved the proposal, however.

After the EDA meeting, city officials submitted an application for the MDTED funds on behalf of Plymouth Foam. Graning was informed by MDTED in the summer of 1994 that the economic recovery fund had been exhausted for that year, but that additional funding might be available in January 1995. Graning relayed this information to Roberts. Becker resubmitted an application to MDTED on August 11, 1994. In a letter dated September 28, 1994, MDTED informed Becker that the economic recovery fund had been fully allocated for the 1995 fiscal year and that no funds would be available to it. Plymouth Foam then obtained a $150,000 bank loan instead of the forgivable loan or grant it says it believed would be available.

Plymouth Foam filed a complaint asserting breach of contract and fraud against

-4-

the city, and the district court granted the city's motion for summary judgment. A decision to grant summary judgment is reviewed de novo. Michalski v. Bank of Am. Ariz., 66 F.3d 993, 995 (8th Cir. 1995). The court views all the evidence in favor of the non-moving party and gives that party all reasonable inferences that may be drawn from the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The non-moving party, however, must set forth specific facts sufficient to raise a genuine issue of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), and there is no issue for trial unless reasonable minds could differ as to the import of the evidence. Anderson, 477 U.S. at 250-51. If the non-moving party has completely failed to support an essential element of a claim, summary judgment is appropriate because all other factual disputes become immaterial. Celotex, 477 U.S. at 322-23.

Plymouth Foam's breach of contract claim must fail because there is no contract to enforce. Under Minnesota law a municipality may enter into a contract only if authorized by its city council. Minn. Stat. Ann. § 412.201 (West 1994). The record contains no evidence that the city council itself accepted the company's proposal or that it authorized Graning or the EDA to accept the company's offer. On appeal, Plymouth Foam no longer argues a contract was ever actually formed.

Plymouth Foam does argue, however, that the city should be estopped from claiming there was no contract because Graning had made earlier representations that an agreement existed and that MDTED had agreed to provide $150,000. Equitable estoppel is intended to prevent a party "from taking unconscionable advantage of [its] own wrong by asserting [its] strict legal rights." Brown v. Minnesota Dept. of Pub. Welfare, 368 N.W.2d 906, 910 (Minn. 1985) (citation omitted). A claim of estoppel requires proof that a party made representations or inducements upon which the other party reasonably relied to its detriment. Id. Estoppel is an equitable remedy within the discretion of the trial court that is applied sparingly against the government. Id., 368 N.W.2d at 910. There is a heavy burden to establish estoppel against a governmental entity; it requires proof that the entity acted wrongfully and that a serious injustice

would result if it were not estopped. Id.; Ridgewood Dev. Co. v. State, 294 N.W.2d 288, 293 (Minn. 1980).

Plymouth Foam is unable to show the city itself made any representations. Its estoppel argument relies on the verbal comments of David Graning who is an employee of the city and does not sit on either the EDA or the city council. "Whether an administrative officer is authorized to make a representation is an important consideration in determining whether the government should be estopped from contesting the accuracy of that representation." Mesaba Aviation v. County of Itasca, 258 N.W.2d 877, 879 (Minn. 1977). "No representation, statement, promises, or acts of ratification by officers of a municipal corporation or a county can operate to estop it to assert the invalidity of a contract where such officers were without power to enter into such a contract in behalf of the corporation." 56 Am. Jur. 2d, Municipal Corporations § 528 (1971 & 1997 Supp.); see also Jasaka Co. v. City of St. Paul, 309 N.W.2d 40, 44 (Minn. 1981) (municipality is rarely estopped by the unauthorized acts or omissions of its officers or agents); City of Fergus Falls v. Whitlock, 77 N.W.2d 194, 198 (Minn. 1956) (government not estopped by unauthorized act of officer); Alexander Co. v. City of Owatonna, 24 N.W.2d 244, 249-50 (Minn. 1946) (same). Plymouth Foam does not dispute that Graning could not bind the city to a contract or that he was held out as having such authority. Since Graning was not authorized to enter into a contract with Plymouth Foam on behalf of the city, his representations that such an agreement had been reached do not estop the city from arguing there was no contract.

Even if Graning's representations could be attributed to the city, Plymouth Foam's reliance on those representations was not justified. "All persons contracting with a municipal corporation are conclusively presumed to know the extent of the authority possessed by the officers with whom they are dealing," Jewell Belting Co. v. Village of Bertha, 97 N.W. 424, 425 (Minn. 1903), because the law and public records give other parties constructive notice of the powers and functions of such

officers.  See 13A Dunnell Minnesota Digest 2d, Municipal Corporations, § 7.05(b) (3d ed. 1981).  Graning was not authorized to contract on behalf of the city or to speak definitively about what the city council had or had not approved.  Roberts is a sophisticated businessman and part owner of a multi-million dollar company, and the law, public records, and his experience with the earlier incentive package approved by the city council put him on notice about what was required to reach an agreement with the city.  Reliance on the oral statements of a city employee regarding the terms or status of an agreement of this type and magnitude was not justified.

Plymouth Foam also argues that Graning's representations mean that the city committed fraud.  To establish a claim for fraud under Minnesota law, a plaintiff must show: (1) a false representation of a material fact susceptible to knowledge; (2) the defendant knew it to be false or asserted it as his own knowledge without knowing whether it was true or false; (3) the defendant intended the plaintiff to act on the representation; (4) the plaintiff was justified in relying on the representation; and (5) the plaintiff suffered damages.  See Davis v. Re-Trac Mfg. Corp., 149 N.W.2d 37, 38-39 (Minn. 1967).

As with the estoppel claim, Plymouth has not shown its reliance on Graning's alleged representations was reasonable.  Graning had no authority to bind the city, and Roberts is conclusively presumed to be aware of this fact.  See Jewell Belting, 97 N.W. at 425.  Since he knew Graning could not bind the city and because his earlier dealings with the city and the Minnesota statutory code put him on notice of what was required to reach an agreement, it was not reasonable for Roberts to rely on Graning's oral statements.  Summary judgment for the city on the fraud claim was appropriate.

For these reasons the judgment is affirmed.

A true copy.

Attest:

     CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.