Esther NOSKE a/k/a E.M. Noske Plaintiff,

v.

James L. NOSKE; James Noske and BBCA, Inc, as Alter Ego of James Noske; Joan M. Noske; Joan Noske and BBCA, Inc., as Alter Ego of Joan Noske; The Basic Bible Church of America, The Order of Almighty God, Chapter 7024, an unincorporated, unrecorded, assumed name; Basic Bible Church of America, Inc., A Minnesota Non–Profit Corporation; Joan M. Noske, Trustee under the provisions of a certain Trust Agreement dated June 26, 1978; God's Helping Hands, a Minnesota Non–Profit Corporation, f/k/a BBCA, Inc.; State of Minnesota; The United States of America, through its Treasury Department and Internal Revenue Service; Faye Sitzmann; and all unknown persons or entities claiming any right, title, estate, interest, or lien in the real estate described in the Complaint herein, as well as unknown heirs of or successors of, anyone who would otherwise be made a Defendant were it not for their death, whose names or existences are unascertainable, Defendants.

Civil No. 96–342(DWF/RLE).

United States District Court, D. Minnesota.

Jan. 12, 1999.

**1026**

Denis E. Hynes, Hynes Law Office, St. Cloud, MN, for plaintiff.

Noreene C. Stehlik and Lawrence A. Casper, United States Department of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

Plaintiff Esther Noske ("Plaintiff") commenced this action to quiet title in her name to certain property located in Stearns County. Defendant The United States of America ("United States") had filed notices of federal tax liens upon the property pursuant to the tax liabilities of Plaintiff's adult children. The United States subsequently levied upon and then sold the property in 1996. Plaintiff has since repurchased the property.

The matter is currently before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 28) and Defendant United States' Cross–Motion for Summary Judgment (Doc. No. 31). Plaintiff asserts that the two 1977 deeds which purported to transfer title to the property from Plaintiff to a religious organization involving her children were void, due to the fact that the religious organization had no capacity to take title. Plaintiff claims that, because the deeds were invalid, her children consequently had no interest in the property, and the United States' liens and levy were therefore wrongful. Plaintiff asserts that she is consequently entitled to recoup her expenditures arising out of the repurchase of her property. The United States asserts that the 1977 deeds were valid, that Plaintiff's interest in the property was thereby extinguished, and that Plaintiff's claim should therefore be dismissed.

Because the Court finds that Plaintiff is estopped from attacking the validity of the 1977 deeds or, in the alternative, that the religious organization possessed capacity to take title and the 1977 deeds were valid, the Plaintiff's Motion for Summary Judgment is denied, the Defendant's Cross–Motion for Summary Judgment is granted and the Plaintiff's claim is dismissed with prejudice.

### Background

Plaintiff Esther Noske has lived continuously on her homestead, located in Stearns County, since 1959. (Affidavit of Esther Noske ¶ 2; Affidavit of William J. Schroeder, Ex. B at Document 62.) She has paid the expenses and property taxes on the property since 1960. (Noske Aff. at ¶ 3.) Defendants James Noske and Joan Noske are Plaintiff's adult son and daughter, both currently in federal prison for conspiracy and tax fraud crimes.

In 1977, Plaintiff signed two warranty deeds purporting to convey the land to the Basic Bible Church of America, The Order of Almighty God, Chapter 7024 ("Chapter 7024"). (Noske Aff. at ¶ 3; Schroeder Aff., Ex. B at Doc. 66.) Plaintiff stated that she cannot remember why she granted her homestead to Chapter 7024, but divulged that she was probably urged to do so by her adult son. (Noske Aff. at ¶ 3.) In 1979, a quit claim deed was filed, purporting to transfer title from the Basic Bible Church of America, Inc. to Joan Noske as trustee. (Schroeder Aff., Ex. B at Doc. 68.) Then, in 1981, a quit claim deed was filed, purporting to transfer title from Joan Noske, as trustee for Chapter 7024, to BBCA, Inc.[1] (Schroeder Aff., Ex. B at Doc. 70.)

It is undisputed that Chapter 7024 was not registered with the Minnesota Secretary of State as a nonprofit corporation,

---

1. Chapter 7024; the Basic Bible Church of America, Inc.; and BBCA, Inc. all appear to be separate organizations. In addition, it appears that the Basic Bible Church of America, Inc. never received title from Chapter 7024 before purportedly conveying title in 1979. However, only the validity of the 1977 deed is at issue in the present matter. If the 1977 deed was valid, then Plaintiff's interest in the property was extinguished in 1977 and her cause of action must fail. If the deed was not valid, then the subsequent transfers were void, her children had no interest in the property, and the United States' levy upon the property was wrongful. *Security Counselors, Inc. v. U.S.*, 860 F.2d 867, 869 (8th Cir.1988), citing *Flores v. U.S.*, 551 F.2d 1169, 1171 (9th Cir.1977).

and that the Minnesota Secretary of State had no record of Chapter 7024's existence. (Schroeder Aff., Ex. C.) However, a copy of the Bylaws of Chapter 7024 was filed and recorded in Stearns County on December 15, 1976. (Government's Ex. A at pp. 545–554.)[2] The document also included the appointment of James Noske as head of the order. (Government's Ex. A at p. 553.) Joan Noske and the Plaintiff were designated as trustees. (Government's Ex. A at p. 545.) James Noske, Joan Noske, and the Plaintiff all signed the Bylaws. (Government's Ex. A at p. 553.)

Beginning in 1987, notices of federal tax liens were filed in Stearns County against the property. (Schroeder Aff., Ex. B at Doc. 72, 73, 74, 75.) The liens pertained to the tax liability of Chapter 7024 and BBCA, Inc., as the alter egos of James Noske and Joan Noske. (Schroeder Aff., Ex. B at Exhibit A, pp. 1–3.)

On October 3, 1996, the Internal Revenue Service seized the property. (Noske Aff. at ¶ 6.) On November 26, 1996, Defendant Faye Sitzmann purchased the property at a tax sale, then sold her interest back to Plaintiff. (*Id.*)

Plaintiff originally commenced this action in state court as a quiet title action in 1996. The United States removed the action to federal court pursuant to 28 U.S.C. § 1444. Plaintiff filed her motion for summary judgment on her claims to quiet title to the property in her name and to recover for wrongful levy. In its cross-motion for summary judgment, the United States asserts that Plaintiff had no title or interest in the property when the land was seized, and her complaint must therefore be dismissed.

**Discussion**

**A. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment

as a matter of law. Fed.R.Civ.P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir.1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed.R.Civ.P. 1. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik,* 47 F.3d at 957.

**B. Choice of Law**

█ In defining the property rights upon which the government has levied, the court looks to state law to determine the taxpayer's interest in the property in question. *O'Hagan v. U.S.,* 86 F.3d 776, 779 (8th Cir.1996). The Court therefore applies Minnesota law in its determination in the present matter.

**C. Estoppel**

█ Under Minnesota law, estoppel is an equitable doctrine within the court's

2. Government's Exhibit A also includes a document entitled a "Charter." However, this document is executed in the name of The Basic Bible Church, not Chapter 7024. No

reference is made to Chapter 7024 anywhere in the "Charter." (Government's Ex. A at pp. 561–65.)

discretion and is intended to prevent a party from taking unconscionable advantage of its own wrong by asserting its strict legal rights. *Plymouth Foam Products v. City of Becker, Minnesota,* 120 F.3d 153, 156 (8th Cir.1997), citing *Brown v. Minnesota Dept. of Pub. Welfare,* 368 N.W.2d 906, 910 (Minn.1985); *Northern Petrochemical Co. v. United States Fire Insurance Co.,* 277 N.W.2d 408, 410 (Minn. 1979). Equitable estoppel is the effect of the voluntary conduct of a party whereby he or she is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his or her position for the worse. *Petition of Nelson,* 495 N.W.2d 200, 203 (Minn.1993).

 The doctrine of equitable estoppel is addressed to the discretion of the court, whose decision turns on the facts of the case at bar. *Evans v. Government Emp. Ins. Co.,* 257 N.W.2d 689, 693 (Minn. 1977). Facts giving rise to equitable estoppel need be proved only by a fair preponderance of the evidence, but the facts themselves must be clear, positive and unequivocal in their implication. *Eliason v. Production Credit Assn. of Aitkin,* 259 Minn. 134, 106 N.W.2d 210, 212–13 (1960); *Rice Street VFW, Post No. 3877 v. City of St. Paul,* 452 N.W.2d 503, 508 (Minn.Ct. App.1990). When the facts are such that only one inference may be drawn, the application of estoppel becomes a question of law for the court to decide. *L & H Transp., Inc. v. Drew Agency, Inc.,* 403 N.W.2d 223, 227 (Minn.1987).

 Under Minnesota law, equitable estoppel may be asserted where (1) there has been a misrepresentation of material fact, (2) the party to be estopped knew or should have known that the representation was false, (3) the party to be estopped intended the representation to be acted upon, (4) the party asserting equitable estoppel lacked the knowledge of the true facts, and (5) the party asserting the estoppel did, in fact, rely upon the misrepre-

sentation to its detriment. *Transamerica Ins. Co. v. IBC,* 94 F.3d 1204, 1208–09 (8th Cir.1996). In short, a claim of estoppel requires proof that a party made representations or inducements upon which the other party reasonably relied to its detriment. *Plymouth Foam,* 120 F.3d at 156.

In the present matter, Plaintiff concedes that she voluntarily executed two deeds transferring the property to Chapter 7024 in 1977. Although Plaintiff divulged that she performed the transfer at the request of her adult son, Plaintiff has never asserted that she was under duress, was unduly influenced, or that her actions were in any other way involuntary; nor has Plaintiff claimed that she did not intend to transfer the property. Rather, the evidence in the record establishes that Plaintiff voluntarily and intentionally transferred her property to Chapter 7024 in 1977.

Furthermore, as Plaintiff properly executed the two deeds in 1977, she either knew or should have known that anyone who investigated the chain of title would know and believe that Chapter 7024 owned the property in question. The United States did in fact rely upon those two deeds and the subsequent chain of title when the government filed notices of liens that attached to the property.

Finally, the United States would have relied on the deeds to the government's detriment if the Court allowed Plaintiff to attack the validity of the deeds. The United States incurred significant costs in pursuing the tax liens in regards to the subject property, including the administrative costs of filing the numerous tax liens in Stearns County, as well as substantial litigation costs incurred in defending the government's interest in the property in *BBCA, Inc. v. United States,* 954 F.2d 1429 (8th Cir.), *reh'g denied, cert. denied,* 506 U.S. 866, 113 S.Ct. 192, 121 L.Ed.2d 136 (1992).

 In summary, therefore, Plaintiff voluntarily and intentionally executed two deeds that transferred her property to

Chapter 7024 in 1977; the United States relied upon that chain of title in levying upon the property to satisfy BBCA, Inc.'s outstanding tax liabilities; and the United States would be detrimentally affected if Plaintiff was allowed to attack the validity of the deeds at the present time, approximately twenty years after the deeds were duly executed.

Finally, to allow Plaintiff to negate the deed she voluntarily and intentionally executed in 1977 would effectively undo twenty years of established property rights in regards to the land in question. The Court declines to permit Plaintiff to achieve this result.

### D. Validity of the 1977 Deeds

 Even if the Court were to look behind the 1977 deeds to determine the validity of the conveyance, Plaintiff could not prevail on her claim. Where a deed is regular on its face and duly recorded, the burden of proof is on the party attacking it to show facts establishing its invalidity. *Yliniemi v. Mausolf,* 371 N.W.2d 218, 222 (Minn.Ct.App.1985), citing *McClung v. Steen,* 32 F. 373 (D.Minn.1887). Plaintiff has not met this burden. It is undisputed that the 1977 deeds were regular on their face and were duly recorded.[3] In addition, Chapter 7024 possessed capacity to take title under Minnesota law, pursuant to Minn.Stat. § 315.01 et seq.

In 1977, the year in which the two deeds were recorded, Chapter 315 of the Minnesota Statutes, entitled Religious Associations, provided that "[t]he stated worshipers with any church, congregation, or religious society, not already incorporated, who are of lawful age and have considered as belonging thereto, **may elect trustees thereof and incorporate the same in the manner herein provided.**" Minn.Stat. § 315.01, Subd. 1 (1976) (emphasis added).

Chapter 315 then set forth the provisions under which religious associations could incorporate under the statute:

> Subd. 4. Designation. When, by the constitution, rules, and usages of any particular church or religious denomination, the minster or minsters, elders, and deacons, or other officers elected by any church or congregation according to such constitution, rules or usages, are thereby constituted the trustees of such church or congregation, such designated persons may assemble and execute and acknowledge a certificate, stating therein the name by which they and their successors in office shall forever thereafter be called and known. **Upon the filing and record of this certificate with the county recorder of the proper county, such persons and their successors shall be a body corporate by the name expressed therein.**

Minn.Stat. § 315.01, Subd. 4 (1976) (emphasis added).

The Bylaws of Chapter 7024, duly filed in Stearns County, fulfill the provisions of Subdivision 4 under the statute. Article I of the Bylaws is explicitly entitled "Designation." (Government's Ex. A at p. 545.) Article I states as follows: "Designation. This Order is named, The Order of Almighty God, Chapter 7024, of the Basic Bible Church of America ..." (*Id.*) Article III of the Bylaws sets forth that "[o]fficers shall consist of Rev. James L. Noske as head of this Chapter and J.M. Noske and E.M. Noske as Trustees of this Chapter." (*Id.*) The document further states that the Bylaws were "[g]ranted by the authority of the Bishops in Council of The Basic Bible Church of America ... and Jerome Daly, D.D., head of The Order of Almighty God, with full power and authority ... " (Government's Ex. A at p. 553). Finally, the document was filed and recorded in

---

3. Indeed, Plaintiff's own expert did not initially conclude that the deeds were invalid by reason of Chapter 7024's inability to take title. Plaintiff's expert did not question Chapter 7024's ability to take title until Plaintiff's counsel brought the issue to his attention. (Deposition of William J. Schroeder, p. 55.)

Stearns County on December 15, 1976. (Government's Ex. A at p. 554.)

 The Bylaws therefore constitute a duly filed document, granted by authority of the parent church's head officer; designating the church's trustees, of whom the Plaintiff was included; and setting forth the name by which the church would thereafter be known. Chapter 7024 thereby fulfilled the requirements of Minn.Stat. § 315.01, Subd. 4.

Under the statute, Chapter 7024 was therefore endowed with capacity to take title:

> Every corporation organized under this chapter may, in its corporate name, sue and be sued, **hold, purchase, and receive title**, by gift, grant, or other conveyance of and to any property, real or personal, with power to mortgage, sell, or convey the same.

Minn.Stat. § 315.09 (1976) (emphasis added).

Therefore, by fulfilling the provisions of the statute, Chapter 7024 was capable of taking title in 1977. The two deeds signed by the Plaintiff were therefore valid.

### Conclusion

Plaintiff voluntarily and intentionally transferred title to the property in question in 1977, approximately twenty years before filing this action. Accordingly, Plaintiff is estopped from attacking the validity of that transfer in the present matter. Even if Plaintiff was allowed to attack the validity of the two deeds she signed in 1977, Plaintiff could not prevail on her claim. The evidence in the record establishes that Chapter 7024 possessed capacity to take title under Minnesota law, and the deeds were consequently valid.

The Court is not unmindful that in many respects the Plaintiff in this case was a victim of circumstance, and in fact, a victim at the hands of her own children. The Court's decision is not a reflection on the character or integrity of the Plaintiff. However, while the Court was hopeful that some type of settlement could be reached between the parties, based upon the record before the Court and the applicable law, the Court is obligated to rule as it has.

For the reasons stated, **IT IS HEREBY ORDERED**:

A. The Plaintiff's motion for Summary Judgment (Doc. No. 28) is **DENIED**.

B. The Defendant United States' Cross-Motion for Summary Judgment (Doc. No. 31) is **GRANTED** and the COMPLAINT is **DISMISSED WITH PREJUDICE**,

**LET JUDGMENT BE ENTERED ACCORDINGLY.**